ALICE B. DORSEY, LEIGHTON S. DORSEY, BEATRICE P. DORSEY and WILLIAM G. DORSEY, Plaintiffs, v. COASTAL TANK LINES, INC., a Delaware Corporation, EDWARD McDEVITT, THE STATE OF DELAWARE, DELAWARE NATIONAL GUARD, an agency of the State of Delaware and WALTER ELMER DEPUTY, Defendants.

(*June* 24, 1957.)

CHRISTIE, J., sitting.

*James R. Morford* and *Ernest S. Wilson, Jr.*, for plaintiffs.

*Herbert L. Cobin,* Chief Deputy Attorney-General, for the State.

Superior Court for New Castle County, No. 1054, Civil Action, 1955.

CHRISTIE, J.:

There was a motor vehicle collision on August 2, 1955 on U. S. Route 13, approximately five miles south of Dover. Plain-

tiff, Beatrice P. Dorsey, was the operator of one of the vehicles involved in the collision, and plaintiff, Alice B. Dorsey, was a passenger. Plaintiff, Leighton S. Dorsey, is the husband of Alice B. Dorsey. These plaintiffs brought an action against the various defendants as the owners or operators of the other vehicles involved in the collision on account of the alleged negligence of the defendants. Among the defendants is the State of Delaware. This defendant was added to the already pending suit by *ex parte* Order dated July 17, 1956. The Order stems from Chapter 622, Volume 50, *Laws of Delaware,* approved July 9, 1956, which reads as follows:

"An Act To Waive the Sovereign Immunity of the State of Delaware and Permit a Suit in Tort Against the State of Delaware by Coastal Tank Lines, Inc., Alice B. Dorsey, Leighton S. Dorsey, Beatrice P. Dorsey and William G. Dorsey, Arising Out of a Collision With a Vehicle of the Delaware National Guard on August 2, 1955.

"Be it enacted by the General Assembly of the State of Delaware:

"Section 1. That sovereign immunity of the State of Delaware is hereby waived for the sole and exclusive purpose of permitting a suit in tort against the State of Delaware by Coastal Tank Lines, Inc., Alice B. Dorsey, Leighton S. Dorsey, Beatrice P. Dorsey, and William G. Dorsey, or any of them, on any cause of action against the State of Delaware arising out of a collision with a vehicle of the Delaware National Guard on August 2, 1955.

"Section 2. The causes of action above referred to shall accrue as of the date of the passage of this act."

The State seeks the dismissal of the complaint against the State of Delaware on the basis that the complaint fails to state a claim upon which relief can be granted. The State's argument is based almost entirely upon the theory that the statute above quoted waived the sovereign immunity of the State as to the

filing of a suit only and did not waive sovereign immunity as to liability for its torts. The State cites a number of cases from other jurisdictions where statutes permitting the filing of suits against the State were held not to waive the State's immunity as to liability. *Eastern Union Co. of Delaware, Inc. v. Moffat Tunnel Improvement Dist.*, 1934, 6 *W. W. Harr.* 488, 178 *A.* 864; *Flait v. Mayor and Council of Wilmington, S. Ct.* 1953, 9 *Terry* 89, 97 *A.* 2d 545; *Smith v. State*, 1920, 227 *N. Y.* 405, 125 *N. E.* 841, 13 *A. L. R.* 1264; *Van Antwerp v. State*, 1952, 334 *Mich.* 593, 55 *N. W.* 2d 108; *St. Regis Tribe of Mohawk Indians v. State, Ct. of Claims*, 1956, 4 *Misc.* 2d 110, 158 *N. Y. S.* 2d 540; *Wisconsin Granite Co. v. State*, 1929, 54 *S. D.* 482, 223 *N. W.* 600; *Talley v. Northern San Diego County Hosp. Dist.*, 1953, 41 *Cal.* 2d 33, 257 *P.* 2d 22.

The plaintiffs attack the State's argument on the basis that it would in effect write the statute off the books since even without that statute the plaintiffs could have filed a suit which would have been subject to dismissal on the grounds now argued by the State. *Westerson v. State*, 1940, 207 *Minn.* 412, 291 *N. W.* 900; *In Pennington's Adm'r v. Commonwealth*, 1932, 242 *Ky.* 527, 46 *S. W.* 2d 1079; *Varnado v. State, Ct. of Appeal* 1931, 18 *La. App.* 624, 136 *So.* 771.

 Plaintiffs rely on a presumption against useless or absurd applications of legislation. *Robinson v. Jackson*, 1936, 116 *N. J. L.* 476, 184 *A.* 811, 105 *A. L. R.* 1466; *Lau Ow Bew v. United States*, 1892, 144 *U. S.* 47, 12 *S. Ct.* 517, 36 *L. Ed.* 340.

The plaintiffs further contend that the specific statutory language involved is clearly broad enough to permit the case to go to trial.

It is conceded that in any event further legislation would be necessary before it would be possible to take funds from the State treasury to pay any judgment that may result from the trial of this case. The Court attaches some significance to the obvious fact that under Delaware law liability or at least payment is impossible under Chapter 622. *Del. C. Ann.*, Delaware Con-

stitution Article 8, Section 6; 29 *Delaware Code*, § 6339. This fact distinguishes this case from those cited.

■ It is the opinion of the Court that by Chapter 622 the General Assembly waived on behalf of the State all aspects of sovereign immunity in so far as sovereign immunity and technical objections based thereon would prevent a trial of the case.

The significant words of the statute are:

"That sovereign immunity of the State of Delaware is hereby waived for the sole and exclusive purpose of permitting a suit in tort against the State of Delaware * * * on any cause of action * * * arising out of a collision with a vehicle of the Delaware National Guard on August 2, 1955.

"The causes of action * * * shall accrue as of the date of the passage of this act."

Without going beyond the four corners of the act, it is clear that:

1. The General Assembly waived sovereign immunity.

2. In so doing, it anticipated that causes of action had been caused to accrue.

3. Although complete waiver of liability is not included since there is no appropriation, a suit in tort was authorized.

■ The General Assembly has called in the judicial branch of the government to determine what liability would exist if the State did not have sovereign immunity. If such determination is in favor of the plaintiffs, additional legislation will be necessary before any payment can be made. The Courts in Delaware perform a few nonjudicial functions. Surely, the General Assembly may assign the Court the semi-judicial task here assigned if it sees fit to do so even though the Court would normally be under no duty to try such a case. The validity of legislative acts which depart from established patterns of govern-

mental organization has been consistently upheld. *State ex rel. Craven v. Schorr, Del.* 1957, 131 *A.* 2d 158.

The same General Assembly expressed itself on the subject of governmental immunity from suit and the defense of sovereignty in another recent enactment. Chapter 481, Volume 50, *Delaware Laws,* 18 *Del. C.* § 516, added a new section to the Delaware Code to read as follows:

"Every insurance contract covering persons employed by or property belonging to the State of Delaware or any political subdivision thereof shall contain a provision agreeing on behalf of the insuring company that the defense of sovereignty is waived and cannot and will not be asserted."

The clear intent of Chapter 481 is that in cases where the State has protected itself with insurance the defense of sovereignty shall not prevail or even be asserted. Although Chapter 481 has no direct application to the case at bar since the accident on which this case is based took place before Chapter 481 became law, nevertheless its passage casts light on the legislative attitude toward the defense of sovereign immunity.

These two statutes taken together may indicate that the General Assembly tends to agree with Justice Carter who stated in his dissent in *Talley v. Northern San Diego County Hospital Dist. supra*:

"The government obviously cannot insure the citizen against all defects and errors in administration, but there is no reason why the most flagrant of the injuries wrongfully sustained by the citizen, those arising from the torts of governmental officers and employees, should be allowed to rest at the door of the unfortunate citizen alone. The entire doctrine of governmental immunity rests upon a rotten foundation, and professors, writers and liberal minded judges are of the view that it should be placed in the judicial garbage can where it belongs." 257 *P.* 2d 22, 28.

The decisions as to the effect of different statutes on different factual situations are not particularly helpful since it is felt that the language of the Delaware statute is clear enough in itself to overcome the State's motion to dismiss. Furthermore the cases dealing with liability or lack of liability, as has been pointed out, are not regarded as entirely apropos. Nevertheless, the Court has studied the cases because they cast considerable light on the attitude which other Courts have taken toward somewhat similar problems.

The cases cited by the State, some of which are listed above, do indeed hold that a waiver of immunity from suit does not waive the State's right to assert other defenses nor does it create liability where none existed before. Most of these cases may be distinguished in that they deal with statutes granting a court general jurisdiction to hear cases against the State or granting a government agency the general right to sue and be sued. Since it is the Court's duty to carry out the intent of the General Assembly in so far as the intent can be ascertained, the Court must recognize a distinction between a general and a specific statute. If a ridiculous result flows from an application of a general statute at least it can be said that the legislature did not foresee that particular result when it enacted a law which, in its usual application, presents no such difficulties. In such cases it is often almost impossible to determine what the legislature intended as to a situation that obviously did not occur to the lawmakers during their deliberations. If, however, a ridiculous result flows from a proposed application of a statute which was intended to have application to a specific situation, such application of the statute should be given careful scrutiny by the Court. In such case the legislature has considered the very problem covered by the specific statute and its intent should be ascertainable even if the words used are not complete in every detail.

The case of *Fonseca v. State, Tex. Civ. App.* 1956, 297 S. W. 2d 199 and others in which trial has been denied even after specific legislative enactments are not so easily distinguished. In

444

the *Fonseca* case it was held that a House Concurrent Resolution permitting a particular plaintiff to bring suit against the State did not authorize such plaintiff to pursue the suit since the legislature by granting permission to be sued did not thereby waive the defense that a government function was being performed when the tort took place. The Court feels that these cases fail to carry out the express intent of the legislative branch of government. If the holdings in those cases were carried into the case at bar the result would be bad law. The Court will not follow those holdings.

The following language as to a resolution similar to Chapter 622 from *Pennington's Adm'r v. Commonwealth supra* sums up this Court's feeling on the subject:

"It is insisted that, notwithstanding the resolution waives its immunity against being sued by the appellant, it may still rely on the fact that, if deceased's death resulted from the negligence of its agents and employees, this immunity was not expressly or impliedly waived by the resolution. Such a construction of the resolution renders it a nullity. Plainly it was the intention of the Legislature by its adoption of the resolution to waive its immunity against suit in its entirety and to place its defense on the same plane as an ordinary defendant, in the absence of an express reservation to the contrary. The sole object and purpose of the resolution was to empower the appellant to bring an action against the state to recover damages for the death of his decedent. To construe the resolution to mean that the commonwealth retained its immunity from the suit by reason of the conduct of its agents or employees is equivalent to charging the General Assembly in engaging in an absurdity." 46 S. *W.* 2d 1079, 1080.

Order on motion.