SHELLHORN & HILL, INC., and JAMES EVANS, Defendants-Appellants, v. THE STATE OF DELAWARE, etc., Third party Defendant, Appellee, v. HENRY KWIATKOWSKI, etc., Plaintiff.

(*December* 11, 1962.)

SOUTHERLAND, C. J., WOLCOTT and TERRY, J. J., sitting.

*John M. Bader* and *John Biggs, III* (of Bader and Biggs) for appellants.

*S. Samuel Arsht* and *Richard H. Allen* (of Morris, Nichols, Arsht and Tunnell) for appellee.

Supreme Court of the State of Delaware, No. 43, 1962.

WOLCOTT, J.:

This is an action for wrongful deaths brought by decedents' administrator against Shellhorn & Hill, Inc. and James Evans. These defendants sought to make the State of Delaware a third-party defendant on the ground that its Highway Department was negligent in improperly maintaining the highway at the place of the accident, and that such negligence was the cause of the accident.

The State moved to dismiss asserting sovereign immunity. The State was dismissed as thirty-party defendant on this ground. The defendants appeal.

The appeal presents one question only. *viz.*, Does Article I, Section 9 of the Constitution, *Del. C.* amount to a waiver of sovereign immunity on the part of the State of Delaware by reason of the following language:

"Suits may be brought against the state, according to such regulation as shall be made by law."

Appellants argue that the quoted language in itself is a constitutional waiver of sovereign immunity subject to regulating suits against the State, and that this court may prescribe "such regulations" as may be required. The power of this court in this respect, appellants argue, springs from the fact that the doctrine of sovereign immunity was judicially

created and, hence, the courts are at liberty to re-examine it, abolish it, or to promulgate rules to permit its limited abolition.

It has long been thought by the bench and bar of this State that the doctrine of sovereign immunity was applicable in Delaware. This belief is illustrated by the number of reported decisions applying the doctrine of sovereign immunity in suits against municipalities on the theory that they were creatures of the State. See *Flait v. Mayor and Council of Wilmington,* 9 Terry 89, 97 A. 2d 545.

It is true that we have no reported decision squarely holding the doctrine of sovereign immunity applicable in a suit brought against the State. There are, however, several decisions holding that counties are immune from suit as divisions of the State. *Carter v. Wilds,* 8 Houst. 14, 31 A. 715; *Mayor and Council of Wilmington v. Ewing,* 2 Penn. 66, 43 A. 305; *Gilmore v. Commissioners of Rehoboth,* 8 W. W. Harr. 124, 189 A. 284; *Banks v. Downing,* 7 Terry 127, 78 A. 2d 865; and *Dorsey v. Coastal Tank Lines, Inc.,* 11 Terry 437, 133 A. 2d 914.

It is true, however, that the precise argument made in this case, that Article I, Section 9 of the Constitution in itself is a waiver of sovereign immunity, has never apparently been made. The question technically, therefore, is one of first instance.

The argument of appellants to the effect that the courts may supply the regulation to effect the waiver of sovereign immunity depends fundamentally on their premise that the doctrine is judicially created. In substance they seem to argue that Article I, Section 9 is a waiver of this judge-made doctrine, and a direction to the courts to provide the regulation necessary to effectuate the waiver.

We think, however, that sovereign immunity is not judicially created in the State of Delaware. It was estab-

lished initially by our first Constitution and has been continued thereafter by successive Constitutions. We reach this conclusion by the following process.

At common law no suit or action could be brought against the Sovereign for the reason that no court could have jurisdiction over the King, for jurisdiction over the person implied superiority of power and the authority to redress wrongs. In England under the common law no court possessed such power over the King. At comon law any person injured by act of the Sovereign had redress only by petition to the King's Chancery where relief could be given, not as a matter of right but as of grace by the Sovereign, himself. 1 *Blackstone's Commentaries* 242.

Whether or not this doctrine of the common law was judicially created is immaterial, for it is clear that it was part of the common law at the time the present State of Delaware was the Colonial Government of the Three Lower Counties on Delaware. After independence and in the first Constitution of 1776, by Article 25, it was provided that the common law of England should remain in force in the then new Delaware State until altered by a future law of the Legislature. This, we think, was to make the common law doctrine of the immunity of the Sovereign to suit a part of the constitutional law of this State, subject to the right of the Legislature to alter it by the enactment of a law.

By the Constitution of 1792, in Article I, Section 9 the present constitutional provision was made a part of the fundamental law of the State, that is, that suits may be brought against the State "according to such regulations as may be made by law." This provision was continued by Article I, Section 9 of the Constitution of 1831, and by Article I, Section 9 of the present Constitution.

We think, therefore, the conclusion irresistible that the doctrine of sovereign immunity in Delaware is not judicially

created but is created by the Constitution of the State, itself. At bar, therefore, we do not have for decision the question of whether or not sovereign immunity should be abolished in this State, since its abolition, or perhaps, its limitation, is accomplished by the Constitution, itself, "according to such regulations as shall be made by law." The meaning of this clause, of course, presents a problem of construction.

The appellants suggest that the courts may establish such regulations, but we think that this is plainly wrong. Article 25 of the Constitution of 1776, the first provision establishing and granting the right to limit the doctrine, did so in terms of limitation by act of the Legislative Branch of the Government. We do not conceive that the subsequent retention of this provision, but in different language, in the successive Constitutions contemplated the inclusion of the Judicial as an additional branch of Government empowered to limit or abolish the doctrine.

Little assistance in deciding the proper construction is to be found in the Debates of the several Constitutional Conventions. There is no reference in the Debates of the Constitutional Conventions of 1831 and 1897 referring specifically to Article I, Section 9. The only reference in the Debates of the Convention of 1897 is to the effect that the Bill of Rights, that is, Article I of the Constitution, was first drafted in 1792 by John Dickinson and proposed to be adopted in 1897 *in toto*. 4 *Debates* (1897) 2387.

Unfortunately, there are extant no Debates of the deliberations of the Convention of 1792, but in the absence of some indication to the contrary, we would assume that the delegates to that Convention intended by Article I, Section 9 of the Constitution of 1792 to continue in force the effect of the provision of Article 25 of the prior Constitution. Since that prior provision expressly limited the right to modify the doctrine of sovereign immunity as a part of the common law

of England to an act of the Legislature, it follows that the continuation for in excess of 170 years of comparable constitutional language means that only the General Assembly may either waive or partially limit the application of this ancient doctrine.

Furthermore, such action as has been taken which could be considered as a practical construction of the constitutional provision has been in conformity with this view. Thus, by the enactment of 18 *Del. C.* § 516, the General Assembly to some extent limited the doctrine of sovereign immunity by providing that in every insurance contract covering State employees or State-owned property, a provision shall be contained waiving the defense of sovereign immunity. Furthermore, in 1956, a special act (50 *Laws*, Ch. 622) was passed, waiving the sovereign immunity of the State in an action brought for injuries arising out of the collision with a Delaware National Guard vehicle.

Under the circumstances, we think the doctrine of sovereign immunity is a part of the basic law of this State which may be waived solely by law enacted by the General Assembly.

The appellants urge upon us that the application of the doctrine creates unjust results since, otherwise, injuries of an innocent party may be uncompensated. We recognize the force of this suggestion as we recognized it in the *Flait* case. In the *Flait* case, however, we felt bound by a long series of prior decisions holding that in the exercise of governmental functions municipalities, as creatures of the State, are immune from suit in the absence of a waiver of that immunity by the General Assembly. We thought then, and we think now, that however subject to criticism a rule of law may be, the courts are seldom at liberty to disregard or set aside a rule of long standing settled by a series of decisions. The courts are bound to apply the law as it is, and the power to remake it along

lines thought to be more modern in concept should be exercised with great restraint.

In the case at bar, however, we have no choice. The Constitution, itself, prescribes the method of waiving or limiting the defense of sovereign immunity. This is no less binding on the courts than on any other branch of the government. The result may be unwise as a mattery of policy. Policy, however, is to be made by the General Assembly. We suggest to it as eminently proper for its consideration the desirability of permitting, at least to some extent, suits against the State for injuries caused by the torts of State employees. By the enactment of a general law permitting suit against the State under such conditions and circumstances as public policy make desirable, the basic rights and interests of both the State and the individual citizen would be protected.

The judgment below dismissing the complaint as to the State is affirmed.