**Nancy HOLDEN and Charles Wallace Holden, III, her husband, Plaintiffs,**

v.

**George BUNDEK, Secretary of the Department of Public Safety of the State of Delaware, Defendant.**

Superior Court of Delaware, Kent.

Dec. 28, 1972.

Wayne N. Elliott, of Prickett, Ward, Burt & Sanders, Wilmington, for plaintiffs.

James T. Perry, Deputy Atty. Gen., Wilmington, for defendant.

QUILLEN, Judge:

On January 25, 1972, Nancy Holden slipped and fell upon the scale which is a part of the State Police Station on Route 113 near Georgetown, Delaware. As a result of her fall, Mrs. Holden fractured her left leg. The fall has allegedly resulted in a permanent injury to her.

11 Del.C. § 8305 grants the State Highway Department the duty and obligation to maintain a State Police Station at or near Georgetown, Delaware. 29 Del.C. § 8206(1) and 29 Del.C. § 8203(2)(A) place this responsibility upon the defendant—the Secretary of the Department of Public Safety of the State of Delaware.

Mrs. Holden and her husband sued the defendant in tort for injuries Mrs. Holden sustained in the fall of January 25, 1972. The defendant has moved to dismiss this suit on the ground that it is barred by the doctrine of sovereign immunity. It is conceded that the Secretary is being sued in his official capacity and therefore is entitled to the sovereign immunity defense if the defense is available to the government.

The trend of the law is clear. Fifteen years ago this Court within a limited context cited with approval the following language: "The entire doctrine of governmental immunity rests upon a rotten foundation, and professors, writers and liberal minded judges are of the view that it should be placed in the judicial garbage can where it belongs." See dissenting opinion of Justice Carter in Talley v. Northern San Diego County Hospital Dist., 41 Cal.2d 33, 257 P.2d 22, 28 (1953) cited in Dorsey v. Coastal Tank Lines, 11 Terry 437, 133 A.2d 914, 917 (Super.Ct. 1957).

▮ There are, however, peculiar problems when dealing with the tort liability of governmental agencies. See, for example, the factual situation in Raughley v. Department of Health and Social Services, Del.Super., 274 A.2d 702, 703–704 (1971). In the tradition of Delaware court decisions and in the tradition of the separation of powers, sovereign immunity, as an established common law concept, is an absolute bar to all suits against the State unless by legislative act the General Assembly has waived the immunity. Shellhorn & Hill, Inc. v. State, 5 Storey 298, 187 A.2d 71 (Sup.Ct.1962). There is no dispute in this case about Delaware law. The doctrine of sovereign immunity is part of the law of this State.

The issue in this case is whether or not sovereign immunity has been waived.

As part of a comprehensive insurance code revision approved July 3, 1968, Chapter 65 of Title 18 was enacted. It mandated in part that the Governor, the State Auditor and the Insurance Commissioner "shall * * * [p]rotect the public from wrongful actions of State officials and employees and failure or malfunction of state owned property." 56 Del. Laws, Ch. 380, p. 1687. The law provided that coverage could be by "no insurance on small losses, commercial insurance, self-insurance, or a combination of methods." This Court in the Raughley case, supra, construing the original 1968 statute and relying in part on 18 Del.C. § 6508 as it existed in the original act, held that the General Assembly did not intend for the State immediately upon the passage of the Act to be totally exposed on all claims on a no insurance basis. Section 6508, entitled "Defense of sovereignty prohibited", provided that insurance contracts "shall contain a provision agreeing on behalf of the insurer that the defense of sovereignty is waived and cannot and will not be asserted." The Court held that, to the extent the program relied on no insurance or self-insurance, funding and claims processing procedures would have to be developed before it can be effective.

By a statute approved June 30, 1969, Chapter 65 of Title 18 was revised and expanded. 57 Del.Laws, Ch. 187. The three officers were designated the Insurance Coverage Determination Commission and a State Insurance Coverage Office was created. The provisions of revised Chapter 65 retained the mandate to protect the public from wrongful actions of State officials and employees and failure or malfunction of State owned property and a provision authorizing "no insurance on small losses, coverage by commercial insurance, coverage by self-insurance, or a combination of such methods".

The section entitled "Defense of sovereignty prohibited" was renumbered § 6509 and now reads as follows:

"§ 6509. Defense of sovereignty prohibited

"The defense of sovereignty is waived and cannot and will not be asserted as to

any risk or loss covered by the State insurance coverage program, whether same be covered by commercially procured insurance or by self-insurance, and every commercially procured insurance contract shall contain a provision to this effect, where appropriate."

The 1969 statute also added, as part of Subchapter III dealing with self-insurance, 18 Del.C. § 6537 which reads as follows:

"§ 6537. Arbitration of disputes and litigation of claims

"(a) Any dispute between the Coverage Office and a State Agency claimant, which cannot be amicably resolved, shall be referred to arbitration before an arbitrator selected by the Secretary of State. The expense of such arbitration will be borne by the disputants equally. The decision of the arbitrator will be final and binding upon the disputants.

"(b) Any dispute between the Coverage Office and a claimant under the Workmen's Compensation coverage, should same be covered by the Fund, which cannot be amicably resolved, shall be handled in the manner of a claim against a commercial insurer before the Industrial Accident Board with all normal rights of appeal.

"(c) Any dispute between the Coverage Office and a claimant not otherwise covered in subsection (a) and (b) of this section which cannot be amicably resolved, may be made the subject of litigation in any Court of competent jurisdiction in this State."

In addition, it should be noted that, under 29 Del.C. § 8203(5), the Secretary of Public Safety "may make and enter into any and all contracts, agreements or stipulations * * *."

The plaintiffs resist the defense of sovereign immunity on three bases, all of which the plaintiffs say, constitute a legislative waiver of the defense.

The plaintiffs, relying on Wilmington Housing Authority v. Williamson, Del.Supr., 228 A.2d 782 (1967), claim the power to enter contracts is a waiver of sovereign immunity in tort as well as contracts. This reliance is misplaced since the *Williamson* opinion dealt with the power "to sue and be sued" and not with the power to enter contracts. The argument is without merit. See also 18 Del.C. § 6507 which prohibits insurance placement "for which coverage is herein provided" by state agencies other than the State Insurance Coverage Office.

Nor does § 6537(3) defeat the defense of sovereign immunity. It merely provides a forum to resolve disputes between the Coverage Office and a claimant. It does not expressly deal with sovereign immunity. Moreover, in the context of Chapter 65, where sovereign immunity is expressly considered, a waiver of sovereign immunity cannot be inferred from § 6537(3).

Finally, the plaintiffs rely on 18 Del.C. § 6509. Sovereignty under that section is waived for any "risk or loss covered by the State insurance coverage program, whether same be covered by commercially procured insurance or by self-insurance".

The limitation of the waiver to matters covered "by commercially procured insurance or self-insurance" is interesting. It suggests that "loss" as used in § 6502(2)(d) in the phrase "no insurance on small losses" refers to a "loss to State owned property". In any event, if there is no commercial insurance or self-insurance for a particular liability risk, then, notwithstanding the enactment and amendment of Chapter 65, that risk is not "covered by the State insurance coverage program" and sovereignty has not been waived.

The State has filed an affidavit of the Director of Insurance Coverage stating that the Department of Public Safety has

no insurance coverage "either commercial, self-insurance or otherwise" for the accident in question.

It is difficult to understand why so little progress has been made in this area since the original 1968 Act. The State contends that the protection of the public in a routine tort case has not been achieved contrary to the declared legislative policy.

While the Court is not questioning the veracity of the affidavit or the sincerity of the State's counsel in stating the State's position, the Court is reluctant to blindly accept conclusions which have been expressed without a more complete record showing precisely what has been done by the General Assembly and the Insurance Coverage Determination Committee and the Coverage Office. It may be that the significance of the activity since 1968, if any, could give rise to different inferences in the minds of reasonable men and some of the conclusions expressed on behalf of the defendant could be challenged. There does, after all, exist a four year old legislative mandate to set up an insurance program. It is simply hard to understand why the plaintiffs are not protected in a simple slip and fall tort case.

The situation is worsened by a representation made at oral argument to the effect that the Highway Department formerly had commercial insurance coverage. It certainly was not the intention of the General Assembly that the public have less protection as a result of the enactment and amendment of Chapter 65. There may be some unexplored legal contentions available if these facts can be established.

It seems desirable to inquire thoroughly into the facts in order to clarify the application of the law to the circumstances. Ebersole v. Lowengrub, Del.Supr., 4 Storey 463, 180 A.2d 467 (1962). The Motion for Summary Judgment is denied. It is so ordered. If all else fails, this case could be one where a special statute is appropriate.