Adam T. PAJEWSKI, Individually and as
next friend of Katherine Pajewski,
a minor, Plaintiffs,

v.

Christopher L. PERRY et al., Defendants.

Christopher L. PERRY et al., Defendants,

v.

Adam T. PAJEWSKI, Individually and as
next friend of Katherine Pajewski,
a minor, Plaintiffs.

Nos. 122, 1974 and 195, 1975.

Supreme Court of Delaware.

Submitted April 20, 1976.

Decided Aug. 5, 1976.

— ◆ —

Arlen B. Mekler and Jack R. Salley, of Wise & Mekler, Wilmington, for plaintiffs.

Regina M. Small and George E. Gelb, Deputy Attys. Gen., Wilmington, for defendants.

Before HERRMANN, C. J., and DUFFY and McNEILLY, JJ.

DUFFY, Justice:

In these actions for libel and for wrongful invasion of privacy, the Superior Court determined that the State of Delaware, in the person of the Governor and a Cabinet Secretary, was immunized from liability for any claim based on tort but not for one rooted in contract. We consider appeals by both the State and plaintiffs.

I

Plaintiffs, father and his minor child, allege that the Department of Health and Social Services, a State agency created under 29 Del.C. § 7901, received in the regular course of its business confidential information about their family history. They say that such private and personal information, in transparent disguise, was made public by personnel of the Department during a seminar discussion (of child protective services) which it sponsored at the University of Delaware, and by disclosure to a writer for *Delaware Today,* a monthly magazine which published the data.[1] A fuller statement of the facts appears in the opinion of the Superior Court determining the tort claim, 320 A.2d 763 (1974), to which reference is made.

II

We begin with a consideration of plaintiffs' contention based on principles of contract law. In brief, they claim to be third-party beneficiaries of a contract between Delaware and the Federal Government under which the latter provides funds to be used by the State for aid to families with dependent children. The contract is said to arise from the implementation of two separate statutes enacted by the respective Governments. The first of these is the Federal legislation, 42 U.S.C. § 602 (a), which provides that:

"A State plan for aid and services to needy families with children must . . . (9) provide safeguards which restrict the use or disclosure of information concerning applicants and recipients to purposes directly connected with the administration of aid to families with dependent children."

---

1. The publisher and corporate owner of *Delaware Today* are defendants but in this appeal we consider only the rights of plaintiffs as against the State.

The Delaware statute, 31 Del.C. § 111, requires the State Treasurer to accept and distribute such Federal funds.

Plaintiffs contend that the actionable effect of the statutes is to create a contract barring disclosure of the specified information to the public and to *Delaware Today*. And, say plaintiffs, they are beneficiaries of that contract, they have been damaged by its breach (that is, by the disclosure of information about their family history), and they have a right of action thereon.

Relying on our opinion in *Blair v. Anderson*, Del.Supr., 325 A.2d 94 (1974), the Superior Court accepted this hypothesis and denied the State's motion to dismiss. It concluded that plaintiffs were "intended beneficiaries" of the mutual undertaking between the Federal and State Governments, under which the requirement of confidentiality arose and, as implemented, the contract is both "executory and enforceable."

In *Blair* we noted that the United States owed a statutory duty of "safekeeping" and "protection" to a person whom it had caused to be committed. 18 U.S.C. § 4042. Delaware contracted to perform that duty. Since performance of such duty would satisfy a legal obligation which the United States (the promisee) owed the prisoner (the beneficiary), the latter was, under traditional tests, a creditor beneficiary with standing to sue. *Restatement of the Law: Contracts* § 133(1)(b). Not so here.

Neither the record nor the briefs show any duty owed by the United States to plaintiffs which the State has undertaken to perform. That is the significant and determinative difference between this case and *Blair*. We recognize that Delaware may have a contractual duty to the Federal Government to preserve confidentiality of family history of the kind here in issue.

Indeed, common decency and the most modest norms of privacy command that the State not permit its files to be used in the manner here alleged.[2] But it does not follow that plaintiffs are beneficiaries with standing to sue on the legal hypothesis they propose. Indeed, they do not have such standing under the applicable rule of law which we find to be that stated in *Restatement,* supra § 145; it provides:

> "A promisor bound to the United States or to a State or municipality by contract to do an act or render a service to some or all of the members of the public, is subject to no duty under the contract to such members to give compensation for the injurious consequences of performing or attempting to perform it, or of failing to do so, unless,
>
> (a) an intention is manifested in the contract, as interpreted in the light of the circumstances surrounding its formation, that the promisor shall compensate members of the public for such injurious consequences, . . . . ."

We find nothing in the alleged contract nor in the surrounding circumstances which manifests an intention to give plaintiffs a right to sue the State on the grounds here alleged. *Restatement,* supra § 145; *Commonwealth of Pa. v. National Ass'n of Flood Insurers*, M.D., Pa., 378 F. Supp. 1339 (1974); *Martinez v. Socoma Companies, Inc.*, 11 Cal.3d 394, 113 Cal. Rptr. 585, 521 P.2d 841 (1974); *City & County of San Francisco v. Western Air Lines, Inc.*, 204 Cal.App.2d 105, 22 Cal. Rptr. 216 (1962); *Davis v. Nelson-Deppe, Inc.*, 91 Idaho 463, 424 P.2d 733 (1967); *Eastern Air Lines, Inc. v. Town of Islip*, Sup., 229 N.Y.S.2d 117 (1962); *Townsend v. City of Pittsburgh*, 383 Pa. 453, 119 A.2d 227 (1956); *Oman Construction Co. v. Tenn. Central Ry. Co.*, 212 Tenn. 556, 370 S.W.2d 563 (1963).

2. The record shows that the Department of Health and Social Services has Rules under which "public assistance information and records" about a client are regarded as confidential.

In sum, it appears to us that, at most, plaintiffs are incidental beneficiaries of the Federal-State agreement and no right of action is vested in them under principles of contract law. It follows that, to this extent, the judgment of the Superior Court must be reversed.

### III

As we have noted, plaintiffs also found their claim on traditional tort law and, as against the State, the Superior Court applied the Constitutional provision, Art. I § 9, and the decisions thereunder in determining that the action is barred by the doctrine of sovereign immunity. 320 A.2d at 765. With the significant exception discussed below in Part IV hereof, we agree with the Trial Court's conclusion for the reasons stated in its opinion. Compare *Donovan v. Delaware Water & Air Resources Comm'n*, Del.Supr., 358 A.2d 717 (1976).

### IV

Finally, we turn to plaintiffs' argument based upon the provisions of 18 Del.C. ch. 65, an Act which is captioned "Insurance for the Protection of the State." Plaintiffs say that statute is a waiver of immunity to the claim asserted here, while the State argues to the contrary.

### (A)

The legal significance of the State Insurance Program provided for in 18 Del.C. § 6501, etc., has been considered in several Superior Court cases beginning with *Raughley v. Department of Health & Social Serv.*, Del.Super., 274 A.2d 702 (1971), and continuing through *Pipkin v. Department of Highways & Transportation,* Del. Super., 316 A.2d 236 (1974) and *Holden v. Bundek,* Del.Super., 317 A.2d 29 (1972). But this is the first case in which this Court has been asked to consider the Act and the Program.

The key provision on which the waiver of immunity argument is based is § 6511; it reads as follows:

"The defense of sovereignty is waived and cannot and will not be asserted as to any risk or loss covered by the state insurance coverage program, whether same be covered by commercially procured insurance or by self-insurance, and every commercially procured insurance contract shall contain a provision to this effect, where appropriate."

The Superior Court has, of course, considered § 6511 but has rejected the arguments made by plaintiffs in this case. Thus, in *Raughley,* the Court determined that the Act "is merely enabling legislation notwithstanding its mandatory direction." The Court found that a

". . . fully developed and integrated program [of insurance] protecting both the State and the public was contemplated."

Since such a program was not in being, the Court concluded that the waiver in § 6511 was not effective and, applying the immunity doctrine, dismissed tort claims against the State. *Pipkin* adopted the same rationale but on a somewhat more restrictive basis, concluding that without insurance coverage there was no waiver, and so a negligence action against the State was dismissed.

"To decide otherwise [said the Court at 316 A.2d 239] would be to expose the State to claims against which it has no protection and as to which it has enacted no effective waiver of sovereign immunity."

Between *Raughley* and *Pipkin* the Superior Court decided *Holden,* a case with a claim for permanent injuries sustained as a result of alleged negligence by the State Highway Department. In *Holden* the Court made clear its impatient concern with the failure of the State to implement

the Insurance Act, thereby doing injustice to persons injured by fault of the State. Then, noting that it is "difficult to understand why so little progress has been made in this area since the original 1968 Act," the Court refused to accept as determinative an affidavit of "no-coverage" and denied the State's motion for summary judgment on sovereign immunity grounds; the Court permitted a "thorough inquiry" into why there was not protection for plaintiffs in a "simple slip and fall tort case."

In this case the Trial Judge followed the prior Superior Court cases and concluded that there is "no waiver until there is a program," 320 A.2d at 766, and, since there was no program covering plaintiffs' claim, he concluded that there was no waiver.

These are the only reported opinions in which a Delaware Court has considered the impact of § 6511 on sovereign immunity.

(B)

Before addressing ourselves to § 6511 and the other pertinent parts of the Insurance Statute, some comment about sovereign immunity is desirable. That doctrine is clearly a part of our constitutional law, as Chief Justice Southerland emphasized in his landmark opinion in *Shellhorn & Hill, Inc., v. State,* Del.Supr., 5 Storey 298, 187 A.2d 71 (1962). He noted that in Delaware such immunity is not "judicially created . . . but was established by our first Constitution and has been continued thereafter by successive Constitutions." 187 A.2d at 73. As we have indicated, Delaware Courts have applied the doctrine both before and after *Shellhorn & Hill* when it has been invoked by the State in tort actions. Indeed, it has been done in this very case.

But neither the certainty of the doctrine in law nor its longevity necessarily makes its application right or just. On the contrary, it is fair to say that our Courts have applied this kind of immunity with express

reluctance and with an invitation to the General Assembly to remove it. The reason, of course, is that the State, acting through its agents, *does* cause injury to others for which, in justice, it should be legally responsible. And a concept which draws its strength from the notion that the State is outside the law is hardly at home in our third century of independence.

In *Shellhorn & Hill* it was observed that the Constitution "is no less binding on the Courts than on any other branch of government" and, therefore, this Court could not refuse to enforce the doctrine of sovereign immunity when it was asserted. But Chief Justice Southerland went on to say, 187 A.2d at 74:

"We suggest to it [the General Assembly] as eminently proper for its consideration the desirability of permitting, at least to some extent, suits against the State for injuries caused by the torts of State employees. By the enactment of a general law permitting suit against the State under such conditions and circumstances as public policy make desirable, the basic rights and interests of both the State and the individual citizen would be protected."

This state of affairs was identified also by then Justice Wolcott in *George & Lynch, Inc. v. State,* Del.Supr., 7 Storey 158, 197 A.2d 734 (1964), decided just sixteen months after *Shellhorn & Hill,* as to which he said, 197 A.2d at 735:

"The *Shellhorn & Hill* case, of course, dealt with an action in tort, and we suggested for the consideration of the General Assembly that in such class of actions it would be highly proper for the General Assembly by statute to prescribe a manner for the enforcement of such claims against the State, thus waiving the doctrine of sovereign immunity at least to a limited extent."

The Court then determined that when the State Highway Department was authorized by statute to make a contract, that was a

waiver of immunity and the State could be sued for breach of that contract.

Some five years prior to *Shellhorn & Hill* the Superior Court, in concluding that when two statutes were read together they resulted in a waiver of State immunity, said in *Dorsey v. Coastal Tank Lines*, Del. Super., 11 Terry 437, 133 A.2d 914, 917 (1957):

"These . . . statutes taken together may indicate that the General Assembly tends to agree with Justice Carter who stated in his dissent in *Talley v. Northern San Diego County Hospital Dist.* supra [41 Cal.2d 33, 257 P.2d 22]:

'The government obviously cannot insure the citizen against all defects and errors in administration, but there is no reason why the most flagrant of the injuries wrongfully sustained by the citizen, those arising from the torts of governmental officers and employees, should be allowed to rest at the door of the unfortunate citizen alone. The entire doctrine of governmental immunity rests upon a rotten foundation, and professors, writers and liberal minded judges are of the view that it should be placed in the judicial garbage can where it belongs.' 257 P.2d 22, 28"

Before *Dorsey,* this Court had determined that sovereign immunity is available to a municipality in defending against claims based on its own negligence. See *Flait v. Mayor & Council of Wilmington,* Del.Supr., 9 Terry 89, 97 A.2d 545 (1953), and the cases cited therein. But, as in the later cases, the Court was critical, saying

"We are frank to say that if this was a question of first impression, we would be disposed to accept the appellants' arguments against municipal immunity to suit for tort, since it would seem to be a matter of common justice that a loss occasioned by the negligent performance of a function designed to benefit the community as a whole should fall upon the community generally, rather than upon the hapless individual injured through no fault of his own."

These comments, made over a period of some fifteen years before enactment of 18 Del.C. ch. 65, clearly identify the injustice done by the doctrine and urge legislation to repeal it. And the critical comments have continued. Thus, in *Holden v. Bundek,* supra, Judge Quillen quoted with approval Judge Christie's comment in *Dorsey,* 317 A.2d 30, and noted that "[t]he trend of the law is clear," that is, to eliminate sovereign immunity.[3] And in *Donovan v.*

---

3. Currently, the doctrine of governmental immunity is "in disfavor." 72 *Am.Jur.*2d States § 101. It has been rejected as not in the public interest for a variety of reasons in claims against many different governmental agencies. See, for example, *Parish v. Pitts,* 244 Ark. 1239, 429 S.W.2d 45 (1968); *City of Fairbanks v. Schaible,* Alaska, 375 P.2d 201 (1962); *Stone v. Arizona Highway Comm'n,* 93 Ariz. 384, 381 P.2d 107 (1963); *Muskopf v. Corning Hospital District,* 55 Cal.2d 211, 11 Cal. Rptr. 89, 359 P.2d 457 (1961); *Hargrove v. Town of Cocoa Beach,* Fla., 96 So.2d 130 (1957); *Smith v. State,* 93 Idaho 795, 473 P.2d 937 (1970); *Molitor v. Kaneland Community Unit District No. 302,* 18 Ill.2d 11, 163 N.E.2d 89 (1959); *Carroll v. Kittle,* 203 Kan. 841, 457 P.2d 21 (1969); *Haney v. City of Lexington,* Ky., 386 S.W.2d 738 (1964); *Spanel v. Mounds View School District No. 621,* 264 Minn. 279, 118 N.W.2d

795 (1962); *Brown v. City of Omaha,* 183 Neb. 430, 160 N.W.2d 805 (1968); *Rice v. Clark County,* 79 Nev. 253, 382 P.2d 605 (1963); *Willis v. Department of Conservation & Econ. Dev.,* 55 N.J. 534, 264 A.2d 34 (1970); *Becker v. Beaudoin,* 106 R.I. 562, 261 A.2d 896 (1970); *Holytz v. Milwaukee,* 17 Wis.2d 26, 115 N.W.2d 618 (1962).

In the recent decision of *Hicks v. New Mexico,* 88 N.M. 588, 544 P.2d 1153 (1975), the Supreme Court of New Mexico summarized much of the rationale reflected in the decisions abandoning the doctrine:

"The original justification for the doctrine of sovereign immunity was the archaic view that 'the sovereign can do no wrong.' It is hardly necessary for this court to spend time to refute this feudalistic contention. This and all other rationalizations which have been advanced to justify continued adherence to this doctrine are no

*Delaware Water & Air Resources Comm'n* supra, we said that sovereign immunity may be waived and

> "given the growing activity of government and the strong trend to distribute losses across the community, that should be done more often than it is."

To summarize: in Delaware sovereign immunity is based on a Constitutional provision which the Courts applied and criticized repeatedly before 1968. (And since then, as well.) The Courts urged the Legislature to do what Justice Wolcott called "common justice" by a statute eliminating the doctrine and making the State answer for its faults in a court of law. Against that background, it seems clear to us that the Insurance Act embodied in 18 Del.C. ch. 65 was the response made by the General Assembly to the cases.

### (C)

We turn now to the Act, which became effective June 30, 1969, 57 Del.L. ch. 187, some seven years ago. It creates what appears to be a comprehensive insurance program with implementing administrative provisions. A Committee to determine coverage is created (consisting of the Governor, the State Auditor and the Insurance Commissioner), 18 Del.C. § 6502; the forms of coverage are specified, § 6503; the Insurance Commissioner is authorized to promulgate rules and regulations necessary to carry out policy determinations, § 6504; a State Insurance Coverage Office is created, § 6505; and so on. Separate sub-chapters legislate as to commercial insurance and self-insurance programs.

■ Beyond any shadow of a doubt, the Act is mandatory, both in language and in

concept: "shall" is the word used by the General Assembly in every significant section. See, for example, §§ 6503, 6504, 6506, 6507, 6508, and so on. For present purposes, we focus on just two of those provisions.

The "forms of coverage" are specified in § 6503, which states in pertinent part:

> "The Committee shall:
>
> (1) Protect this State from loss to state-owned property;
>
> (2) Protect the public from wrongful actions of State officials and employees and failure or malfunction of state-owned property; . . .."

In plain words the Committee is charged with providing two protections: protection for the State *and* protection for the public. As to the latter, there is no doubt about the statutory responsibility placed on the Committee to protect the public. In 1976, some seven years after enactment, neither § 6503 nor the Act as a whole can be read as mere enabling legislation. Indeed, given the comprehensive plan in the Statute, the mandatory language thereof and the injustice it would correct, we must conclude that the General Assembly intended to enact a viable program which would, in its own words, "[p]rotect the public from wrongful actions of State officials and employees." Certainly we cannot say that the Assembly intended anything less.

■ Other provisions of the Act support our conclusion that § 6503 states the purposes of the Act and charges the Committee with the responsibility of achieving those purposes. Thus, § 6502 gives the Committee discretion to "determine the

longer valid in New Mexico. The argument has been presented that the elimination of sovereign immunity will result in an intolerable financial burden upon the State. We believe it is safe to say that adequate insurance can be secured to eliminate that possible burden in a satisfactory manner. In addition, it would appear that placing the financial burden upon the State, which

is able to distribute its losses throughout the populace, is more just and equitable than forcing the individual who is injured to bear the entire burden alone. There are presently in New Mexico no conditions or circumstances which could rationally support the doctrine of sovereign immunity."

method of insuring, the amount of insurance and the class of coverage," but the Committee must cover "any type of risk to which the State may be exposed." In other words, the Committee has discretion as to the method and amount of coverage of but not as to the *risks* to be insured.

In the face of these mandates as to Legislative purpose, how, then, is § 6511 to be construed? Except for *Holden,* the Superior Court opinions regard the waiver as inanimate until it is vitalized by appropriation. But, as we have said, that is too narrow a reading of the entire Act and, moreover, it fails to recognize the responsibility vested in the Committee.

█ Section 6511 states flatly that the defense of sovereignty "is waived" and "will not be asserted." There is a limitation to that waiver, that is, it extends to "any risk or loss covered by the state insurance coverage program." To determine what risk or loss is covered by that program, we look to § 6502 which directs the Committee to insure *any* type of risk to which the State may be exposed. Such risk may be protected by commercially acquired insurance *or* through a self-insurance program but, the point is, it must be protected. In other words, the statutory plan, as we read it, contemplates a waiver of immunity co-extensive with the insurance program, which shall cover "any type of risk to which the State may be exposed."

█ In the view we take here of the Statute, the State is not entitled to dismissal of the complaint merely by showing, as it has done, that there is neither commercial nor self-insurance covering the liability for the kind of tortious conduct alleged in the complaint. Immunity is presumptively waived by § 6511 and it is, therefore, incumbent upon the State to provide all of the facts as to how the Committee met its responsibilities under 18 Del.C. ch. 65. These include what decisions the Committee has made as to the kinds of risk here involved, whether self-insurance is or was feasible to provide coverage for such risk and the reason for "no coverage."

We recognize that the availability of appropriations to purchase commercial insurance may have an impact on how the Committee has met its statutory responsibility. And there are legal arguments which plaintiffs have made, including a claim to equal protection of the laws, which we have not attempted to decide in this opinion. A decision on such arguments, and whether § 6511 is an effective waiver without supporting insurance coverage, must abide until after there has been a full exploration made of all facts pertinent to this case under 18 Del.C. ch. 65.

\* \* \*

Reversed and remanded for that purpose.