# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| NANCY J. SUTER and<br>GLENN SUTER, her husband,<br><br>Plaintiffs,<br><br>v.<br><br>TYRONE TAYLOR and STATE OF<br>DELAWARE DEPARTMENT OF<br>TRANSPORATION,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. N22C-06-092 CEB |

Submitted: February 10, 2023
Decided: April 18, 2023

## MEMORANDUM OPINION

*Upon Consideration of Defendant State of Delaware Department of
Transportation's Motion for Summary Judgment,*
**GRANTED.**

Joseph J. Rhoades, Esquire, and Stephen T. Morrow, Esquire, RHOADES &
MORROW LLC, Wilmington, Delaware. *Attorneys for Plaintiffs Nancy J. Suter and
Glenn Suter.*

Sarah A. Fruehauf, Esquire, DEPUTY ATTORNEY GENERAL, Wilmington,
Delaware. *Attorney for Defendant State of Delaware Department of Transportation.*

**BUTLER, R.J.**

Before the Court is a motion for summary judgment filed by Defendant State of Delaware Department of Transportation (the "State"). Finding that the clams of Plaintiffs Nancy J. Suter & Glenn Suter (the "Plaintiffs") are barred by sovereign immunity and the State Tort Claims Act, the State's Motion is **GRANTED**.

## BACKGROUND

The Complaint states that on June 14, 2020, Mrs. Suter tripped on an uneven portion of a sidewalk in front of a residence at 701 Brandywine Boulevard in Wilmington, Delaware.[1] She fell and suffered injuries.[2] The Plaintiffs have sued Defendants Tyrone Taylor[3]—the homeowner—and the State. The State has now moved for summary judgment.[4] Attached to the Motion, the State includes an affidavit from Debra Lawhead, the Insurance Coverage Administrator for the State of Delaware, that swears there is no insurance coverage for this event.[5]

The State argues that the doctrine of sovereign immunity bars recovery because no statutory waiver of sovereign immunity exists, there is no insurance coverage that would constitute a waiver and, thus, liability under the State Tort Claims Act is not available to the Plaintiffs. The Plaintiffs, in their Response, claim

---

[1] Compl. ¶ 5, D.I. 1.
[2] *Id.* ¶¶ 7–10.
[3] Mr. Taylor filed a separate motion to dismiss that was denied, subject to further discovery. *See Suter v. Taylor*, 2022 WL 17826009 (Del. Super. Dec. 20, 2022).
[4] *See* Def.'s Mot. for Summ. J., D.I. 14 [hereinafter "Def.'s Mot. for Summ. J."].
[5] Ex. A to *id.*

1

that an analysis of the efforts of the Insurance Coverage Determination Committee (the "Committee") under 18 *Del. C.* ch. 65 is required before sovereign immunity can be asserted and the State has not satisfied this burden.

## STANDARD OF REVIEW

The Court will grant summary judgment if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."[6] In considering a motion for summary judgment, the Court construes the record in the light most favorable to the non-movant.[7] The movant bears the initial burden of demonstrating "clearly the absence of any genuine issue of fact."[8] If that burden is met, then the non-movant must offer "some evidence" of a material factual issue.[9] "If the facts permit reasonable persons to draw but one inference, the question is ripe for summary judgment."[10] Conversely, summary judgment is inappropriate "if there is any reasonable hypothesis by which the opposing party may recover, or if there is a dispute as to a material fact or the inferences to be drawn therefrom."[11]

---

[6] Super. Ct. Civ. R. 56(c).
[7] *E.g.*, *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99 (Del. 1992).
[8] *Brown v. Ocean Drilling & Expl. Co.*, 403 A.2d 1114, 1115 (Del. 1979).
[9] *Phillips v. Del. Power & Light Co.*, 216 A.2d 281, 285 (Del. 1966).
[10] *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995).
[11] *Vanaman v. Milford Mem'l Hosp., Inc.*, 272 A.2d 718, 720 (Del. 1970).

## ANALYSIS

**A. The State is entitled to summary judgment.**

Sovereign immunity has not been waived as to these claims by statute or purchase of insurance coverage. But if the Court found that the State had a burden to analyze the efforts of the Committee, summary judgment would be inappropriate. But the Court finds there is no such burden. So summary judgment for the State is appropriate.

### 1. Sovereign immunity has not been waived in this matter because the claims against the state are not covered by insurance.

According to the doctrine of sovereign immunity, the government may not be sued without its consent.[12] The only way to limit or waive such immunity is by an act of the General Assembly.[13] Unless the State has waived sovereign immunity, any claims against the State or its agencies are barred without further inquiry.[14]

The State may waive sovereign immunity by: (1) a statute that "clearly evidences an intention to do so"[15] or (2) "any risk or loss covered by the state

---

[12] *Doe v. Cates*, 499 A.2d 1175, 1176 (Del. 1985).
[13] *Id.*; *see* Del. Const. art. I, § 9 ("Suits may be brough against the State, according to such regulations as shall be made by law.").
[14] *E.g., Smith v. State*, 2021 WL 2137673, at *2 (Del. Super. May 25, 2021); *Boyer v. Garvin*, 2020 WL 532747, at *2 (Del. Super. Jan. 28, 2020).
[15] *Pauley v. Reinoehl*, 848 A.2d 569, 573 (Del. 2004).

insurance coverage program."[16] The State Tort Claims Act satisfies the former criteria and insurance coverage satisfies the latter.[17]

The affidavit of the State Insurance Coverage Administrator is sufficient evidence that the loss alleged in the Complaint is not covered by any State insurance program.[18]

Likewise, where there is no waiver of sovereign immunity, the limited relief afforded under the State Tort Claims Act is not available to a plaintiff.[19] Since no there is no insurance coverage and no statute expressly waiving sovereign immunity for the Plaintiffs' claims, summary judgment is appropriate.

## 2. The State does not have the burden of analyzing the efforts of the Committee before it may assert sovereign immunity.

In response to the State's Motion, Plaintiffs argue that an analysis of the efforts of the Insurance Coverage Determination Committee is required before sovereign immunity can be asserted.[20] This argument derives from the 1976 decision of the Supreme Court in *Pajewski v. Perry*.[21]

---

[16] 18 *Del. C.* § 6511.
[17] *See generally, Pauley v. Reineohl*, 848 A.2d 569, 573 (Del. 2004).
[18] *See, e.g., Fisher v. Emory Real Est. Serv., Inc.*, 2022 WL 521374 (Del. Super. Feb. 22, 2022); *Smith,* 2021 WL 2137673; *Caraballo v. Del. Dept. of Corr.*, 2001 WL 312453 (Del. Super. Mar. 22, 2001).
[19] *See Doe*, 499 A.2d at 1180.
[20] *See* Pls. Resp. in Opp'n ¶¶ 7–8, D.I. 25 [hereinafter "Pls. Resp."].
[21] 363 A.2d 429 (Del. 1976).

The *Pajewski* decision has interest, but primarily from a historical perspective, as it demonstrates a Supreme Court that had grown frustrated with the General Assembly's failure to implement a comprehensive insurance package in lieu of sovereign immunity.

The case law in the early 1970s tells the story of Delaware's struggles with sovereign immunity and insurance coverage. A short version begins with then Judge Quillen's opinion in *Holden v. Bundek*,[22] in which he quoted this raw sentiment with approval: "The entire doctrine of governmental immunity rests upon a rotten foundation, and professors, writers and liberal minded judges are of the view that it should be placed in the judicial garbage can where it belongs."[23]

More to the point, Judge Quillen explained that 1968 saw a "comprehensive insurance code revision" which would have the government waive sovereign immunity in all cases in favor of insurance coverage, but that the insurance coverage was not yet in effect.[24] The Court denied summary judgment despite the State's affidavit of no insurance, asking instead for a "more complete record showing precisely what has been done by the General Assembly and the Insurance Coverage Determination Committee and the Coverage Office."[25] According to Judge Quillen:

---

[22] 317 A.2d 29 (Del. Super. 1972).

[23] *Id.* at 30 (citing *Talley v. Northern San Diego County Hospital Dist.* 257 P.2d 22, 28 (Cal. 1953)).

[24] *Id.*

[25] *Id.* at 32.

"There does, after all, exist a four year old legislative mandate to set up an insurance program. It is simply hard to understand why the plaintiffs are not protected in a simple slip and fall tort case."[26]

Some insight into the problem came in the case of *Pipkin v. State Department of Highways and Transportation*,[27] in which it was revealed that the State highway department had purchased general insurance to cover tort claims against the department, but the insurer had terminated the agreement before the accident in question.

Then came *Pajewski v. Perry*[28] in 1976, relied on by the Plaintiffs here. This was a suit for defamation brought by a public assistance recipient who claimed state employees had improperly revealed his private facts to a magazine reporter. The trial court had ruled that "there is no waiver [of sovereign immunity] until there is a program, and, since there was no program covering plaintiffs' claim, he concluded that there was no waiver."[29]

The Supreme Court then reversed the summary judgment granted to the State. The Court, clearly frustrated with the failure of the General Assembly to procure

---

[26] *Id.* To the same effect was the ruling in *Blair v. Anderson*, 314 A.2d 919 (Del. Super. 1973), in which the Court denied relief because the "State has not yet adopted a program of insurance to effectuate the legislative intent." *Id.* at 923.
[27] 316 A.2d 236 (Del. Super. 1974).
[28] 363 A.2d 429 (Del. 1976).
[29] *Id. at* 433 (internal quotation marks omitted).

insurance and waive sovereign immunity, demanded that the State provide "all of the facts as to how the Committee met its responsibilities. . . include[ing] what decisions the Committee has made to the kinds of risk here involve, whether self-insurance is or was feasible to provide coverage for such a risk and the reason for 'no coverage.'"[30] This appears to be the high-water mark for the judiciary's forays into legislation and budgeting concerning the waiver of sovereign immunity.

But *Pajewski* was abrogated by *Doe v. Cates*,[31] which held that an inquiry into the Committee's efforts each time the State asserts the defense of sovereign immunity is "no longer necessary."[32] The Court walked through 15 years of effort by the Insurance Coverage Determination Committee to adopt comprehensive insurance with funding by the General Assembly, all for naught. The Court concluded that "as a matter of law, the State has met its burden under the *Pajewski* case and has overcome the presumptive waiver of immunity in 11 Del. C. §6511."[33]

The Plaintiffs suggest that *Doe* has been consistently misinterpreted by this Court and that the Supreme Court did not intend to halt periodic review of the Committee's efforts.[34] The Court disagrees. The Supreme Court may well have been frustrated with the General Assembly when it decided *Pajewski*, but 9 years

---

[30] *Id.* at 435.
[31] 499 A.2d 1175 (Del. 1985).
[32] *Id.* at 1179 n.4.
[33] *Id.* at 1170.
[34] Pls.' Resp. ¶ 11.

later in *Doe*, the Court had become resigned to the fact that the placement and categories of insurance coverage were legislative, not judicial judgments. This Court has repeatedly held that where no waiver of sovereign immunity applies, "sovereign immunity exists and no further analysis is necessary."[35] Indeed, the judiciary is a particularly inappropriate vehicle through which to second guess the budget priorities of the General Assembly and unless directed otherwise, the Court is without authority or direction to do so.

## CONCLUSION

For the foregoing reasons, the State's Motion for Summary Judgment is **GRANTED.**

**IT IS SO ORDERED.**

Charles E. Butler, Resident Judge

---

[35] *Smith*, 2021 WL 2137673, at *2; *see, e.g., Boyer* 2020 WL 532747, at *2.