Lucy RAUGHLEY, Plaintiff,

v.

DEPARTMENT OF HEALTH AND SO-
CIAL SERVICES, an agency of the
State of Delaware, Defendant.

PENN CENTRAL TRANSPORTATION
COMPANY, Defendant and Third-
Party Plaintiff,

v.

Keith JENKINS, Third-Party Defendant.

Superior Court of Delaware,
New Castle.

Feb. 1, 1971.

Morton R. Kimmel, Wilmington, for plaintiff.

Ruth M. Ferrell, Wilmington, for the State.

Robert K. Payson, Wilmington, for Penn Central Transportation Co.

Henry A. Wise, Wilmington, for Keith Jenkins.

QUILLEN, Judge.

The issue before the Court is the motion by the State to dismiss the complaint and cross-claim against it. The State has raised the defense of sovereign immunity to suit. It is agreed that sovereign immunity to suit is a constitutional defense unless waived. Article 1, § 9, Constitution of Delaware.

The facts which give rise to the case are that on April 28, 1970, plaintiff's husband, a conductor for the railroad, was shot and killed, allegedly, by Keith Jenkins, an escapee from the Ferris School of the State of Delaware, a correctional institution. It is alleged that the authorities at Ferris

School were negligent in allowing Jenkins to escape, and in not apprehending him, even though they were aware of his dangerous propensities.

The State asserts that it has not consented to be sued and since Ferris School is operated by an agency of the State, no action against the State can be maintained. The plaintiff and the Railroad contend, however, that the State has abolished the defense of sovereign immunity through the enactment of the State Insurance Code, in particular 18 Del.C. § 6501.[1]

It is the law generally that where sovereign immunity is waived, the waiver only extends to the terms of the statute waiving it. A general waiver of immunity will not be implied from a restricted one. Waiver statutes are usually strictly applied. See Great Northern Life Insurance Co. v. Read, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944) and Elizabeth River Tunnel District v. Beecher, 202 Va. 452, 117 S.E. 2d 685, 85 A.L.R.2d 469 (1961).

In the present case the statute relied upon as a waiver of the defense of sovereign immunity states that the public shall be protected from "wrongful actions of State officials and employees and failure or malfunction of state owned property."

Two questions arise. The first is whether the negligence alleged is a "wrongful act" under the statute. The second is whether the mere enactment of 18 Del.C. § 6501 waived sovereign immunity especially in the light of 18 Del.C. § 6508 which specifically provides that insurance contracts entered under the chapter should contain a waiver of immunity clause or provision.

"Wrongful act" has been defined as:

"An act which in the ordinary course will infringe upon the rights of another to his damage, unless it is done in the

exercise of an equal or superior right." Black's Law Dictionary, 4th Ed.Rev. (1968). Also see 46 Words and Phrases, Wrongful Act.

The Court has considerable doubt that the General Assembly intended to include the negligence alleged here in the "wrongful act" category. It is difficult, however, to abstractly draw the definitional demarcation. There are approaches which could be taken.

In view of the "failures" alleged, one is tempted to say the General Assembly wanted in this statutory context to distinguish acts from omissions. See Randle v. Birmingham Ry., Light & Power Co., 169 Ala. 314, 53 So. 918, 921 (1918). But certainly it was the intention to include some failures, such as the failure to maintain a proper lookout in the typical automobile case. A second factor that comes to mind is that no injury was directly caused by a State employee. But the distinction between direct and indirect causation and the common law concepts of trespass and case are no longer viewed with particular favor. Thirdly, one notes that the operation of correctional facilities constitutes the exercise of discretionary governmental functions by a State agency which is limited by a public budget. But definitional efforts to limit liability on the basis of function are also difficult and often illogical. Compare Wilmington Housing Authority v. Williamson, Del., 228 A.2d 782 (1967).

These considerations dictate the desirability of not judicially defining "wrongful act" at this stage in the development of public insurance programs. Suffice it to say that the Court doubts the General Assembly intended to include a negligent omission in the exercise of a discretionary governmental function which indirectly causes an injury. It is impossible to see how novel programs such as prisoner work

1. 18 Del.C. § 6501 provides in part as follows:
   "(2) Form of coverage. The Governor, the State Auditor, and the Insurance Commissioner shall:

   \* \* \* \* \*
   (b) Protect the public from wrongful actions of State officials and employees and failure or malfunction of state owned property;"

release and mental care in the community could be continued or implemented if the State risks liability in tort each time a prisoner or patient abused the privilege granted him. Moreover, in a broader area, it is noted that there have been recent public discussions of public programs to compensate the victims of crime.

■ The Court's concern about the "wrongful act" definition relates to the second question of the implied waiver of sovereign immunity. Sovereign immunity is an absolute bar to all suits against the State unless by legislative act the General Assembly has waived the immunity. Shellhorn & Hill, Inc. v. State, 5 Storey 298, 187 A.2d 71 (Sup.Ct.1962).

The plaintiff and the Railroad rely on Wilmington Housing Authority v. Williamson, *supra,* at 228 A.2d 788, and George & Lynch, Inc. v. State, 7 Storey 158, 197 A. 2d 734, 736 (Sup.Ct.1964). But in the *Williamson* case, waiver was implied by the grant of power "to sue or be sued." In the *George & Lynch* case, waiver was implied on contractual matters from the authority to "make and enter into any or all contracts, agreements or stipulations."

In this case an implied waiver of immunity is not required in order to proceed with a new governmental activity. No authority was granted by the insurance law expanding governmental activity into a different field where a waiver is necessarily implicit. Rather the General Assembly has directed that the State shall institute an insurance program to protect the public. But that program and the vast state exposure did not exist merely by the passage of Chapter 65 of the Insurance Code. The Act is merely enabling notwithstanding its mandatory direction. It necessarily contemplates the development of a program resting heavily on insurance coverage. It

is implicit that there will be no waiver until there is a program.

■ In addition to the fact that waiver of immunity is not implicit in this legislation, it is noted that the statute specifically provides that insurance contracts "shall contain a provision agreeing on behalf of the insurer that the defense of sovereignty is waived and cannot and will not be asserted." 18 Del.C. § 6508. This statutory provision indicates that the General Assembly felt the defense would still be available if not waived by contract. It is interesting to note that the insurance authority granted in the Housing Authority Statute considered in the *Williamson* case contained no statutory language requiring waiver of immunity in insurance contracts which indicates that in that situation the General Assembly felt the defense of sovereignty did not exist. See 31 Del.C. § 4307(a) (3) and Wilmington Housing Authority v. Williamson, *supra,* at 228 A.2d 788.

It is no answer to argue that coverage can be by "no insurance on small losses, commercial insurance, self-insurance, or a combination of methods." 18 Del.C. § 6501(2) (d). It is apparent that the General Assembly did not intend for the State immediately upon passage of the Act to be totally exposed on all claims on a no insurance basis. A fully developed and integrated program protecting both the State and public was contemplated. To the extent the program relied on no insurance or self-insurance, it is apparent that funding and claims processing procedures will have to be developed before it can be effective.

The motion to dismiss the complaint against the Department of Health and Social Services and to dismiss the cross-claim of the Penn Central Transportation Company against the Department of Health and Social Services is granted. It is so ordered.