**Christine D. TOMEI, Plaintiff**

v.

**Thomas SHARP, Robert Strong, State of Delaware, and the Department of Labor, Defendants.**

**Civ. A. No. 05C–10–104–JOH.**

Superior Court of Delaware, New Castle County.

Submitted: March 13, 2006.

Decided: May 25, 2006.

---

Lori A. Brewington, of Margolis Edelstein, Wilmington, DE, for the plaintiff.

Ralph K. Durstein, of Department of Justice, Wilmington, DE, for the defendants.

## OPINION

HERLIHY, Judge.

Defendants Thomas Sharp, Robert Strong, the Department of Labor, and the State of Delaware move to dismiss plaintiff Christine Tomei's complaint. She has brought an action claiming a violation of the Delaware Whistleblower Protection Act and for breach of the covenant of good faith and fair dealing.

Tomei contends she was fired for her whistleblowing activities. Those activities, however, occurred not while she was employed by the State of Delaware but during her prior job with the United States Government. By statute, employees engaging in certain whistleblowing activities are protected from detrimental action of their employees, such as, termination, change of working conditions, job location, etc., because of those activities. The statute provides for potential remedies against employers, including the State, of reinstatement, damages, etc. Since its enactment in 2004, it has not received any prior judicial interpretation.

The defendants have made it known to the Court that there is no insurance to cover the claims Tomei makes. This, they assert bars her action by virtue of sovereign immunity. In many cases, the non-existence of insurance operates to bar state liability and an issue in this case is whether the absence of insurance immunizes the State.

Tomei's complaint and the defendants' contentions raise other issues some of which are of first impression: When it enacted the Whistleblower Protection Act, did the State waive the defense of sovereign immunity? If there is a waiver, does it include the individual defendants or are they otherwise not subject to suit? Again, assuming there is a waiver, does Tomei have a cause of action against any of the defendants for whistleblowing activities which did not occur while employed as a State employee? Does the non-existence of insurance, despite the State's consent to being sued, separately bar Tomei's action? As to her breach of covenant action, in the

absence of insurance coverage, does the sovereign immunity bar remain?

The Court holds (1) the enactment of the Whistleblower Protection Act ("Whistleblower Act") acts as an express waiver of State immunity or consent to be sued as to the State, but it does not subject the individual defendants to liability; (2) with that express waiver/consent to be sued, the absence of insurance coverage is irrelevant and does not act as a bar to Tomei's action; (3) Tomei is not protected by the Act because her whistleblowing activities did not involve the State of Delaware; and (4) her breach of the covenant action is, however, barred for lack of insurance coverage.

## Applicable Standard

All of the issues arise from the allegations made in Tomei's complaint. On a motion to dismiss, therefore, all well-pled allegations are accepted as true.[1]

## Factual Background

Tomei states that she once worked for the United States Department of Education (DOE). She says she became aware of alleged fraudulent activities in a program with which she was involved and reported it to the DOE Inspector General in October 2000. Later she was a witness in a federal investigation (date unstated). She left federal employment in February 2001.[2]

Around November 2004, she applied for a State of Delaware position in the Department of Labor (DOL), Division of Employment Training. After testing, she was interviewed by two people, not parties to this action, in March, 2005. She asserts

that during the interview she made full disclosure of her prior whistleblowing activity. Tomei alleges she was informed at this time that her firing for being a whistleblower was of no significance.

She had a second interview later in March and a third on April 1, 2005. The interviewers are not defendants in this action. On April 22, 2005, Tomei accepted the offer to become a Trainer/Educator and began work on May 16th. As part of the new job she traveled around to various "One Stop Centers" operated by the State. On May 18th, she was informed by her manager that she was accused of offending a co-worker. Tomei asserts she promptly apologized (to whom is unclear). A meeting was scheduled for May 26, 2005, but defendant Strong cancelled it. He scheduled another one for June 6th.

On that date, Tomei met with Strong and another supervisor (also not a party to this action). She claims that Strong asked her if she had been fired from her federal job for whistleblowing.[3] She confirmed that she had. Tomei then alleges:

21. Strong advised Plaintiff that she needed to look for another job; that there were complaints about her work; and that Plaintiff was going around "pissing people off." At this meeting, Strong threatened to fire Plaintiff, stating that "he had the right to fire her without cause."

22. On or about June 6, 2005, Plaintiff advised Joyce Bolling, Personnel Officer (hereinafter "Bolling") that she [Plaintiff] felt that she was being retaliated against for being a former whistleblower.

1. *Ramunno v. Cawley*, 705 A.2d 1029, 1034 (Del.1998).

2. Paragraph 7 of her complaint states she "separated" from her federal job. Paragraph

9, however, say she was fired from her federal position for her whistleblower activities.

3. Plaintiff's complaint, paragraph 20.

23. Plaintiff requested a meeting with her direct supervisor, Reeder, on or about June 8, 2005. Plaintiff advised Reeder that since Strong knew she [Plaintiff] was a former whistleblower, he must conceive her as a troublemaker, and that a performance plan was necessary. Reeder was unable to schedule a meeting before June 21, 2005 when Plaintiff was scheduled to attend Defendant's New Employee Orientation.

24. On or about June 15, 2005, Plaintiff contacted Kathy Abey (hereinafter "Abey") from Congressman Wayne T. Gilchrest's office. Thereafter, Abey attempted to contact Sharp regarding Plaintiff's previous whistleblower activity with the federal government. Abey spoke to Sharp's administrative assistant regarding the illegality of retaliation and advised that Plaintiff has an active case and was receiving support from the Committee on Government Reform regarding her former whistleblower activity.

25. On June 16, 2005, at 8:30 a.m., Plaintiff was terminated. Strong hand delivered a letter from Sharp indicating that Plaintiff was being terminated for "failure to satisfactorily perform the duties of [her] position." The meeting was held at the Pencader office location and the attendees were Strong, Reeder, and Yvonne Marshall, Human Resources, (hereinafter "Marshall").[4]

Tomei filed suit on October 13, 2005. She sued Secretary Sharp, Strong, the State and the Department of Labor. She brings two causes of action. The first is under the Whistleblower Act against Sharp, Strong, the State, and the Department for violation of the Act. Her second cause is for breach of the covenant of good faith and fair dealing, and it is brought against the same four defendants.

She seeks damages, back pay, front pay, compensation damages, punitive damages, attorney's fees, costs and interest and any other "proper" relief.

### Discussion

Because her action is against the State, one of its cabinet Departments, and two State employees, the quintessential threshold issue is whether any or all of the defendants are immune from liability for either or both causes of action. All the defendants claim they are so immune.

### Whistleblower Action

As noted, this cause of action is against all four defendants. The first issue is whether any of them are liable under the provisions of the Whistleblower Act. If none are, the matter ends there.

■ Article I, § 9 of the Delaware Constitution reads, in part: "Suits may be brought against the State, according to such regulations as shall be made by law." This is not a waiver of sovereign immunity by the State.[5]

■ The method of abolishing sovereign immunity is in § 9 itself: "according to such regulations as shall be made by law."[6] Sovereign immunity may be waived solely by laws enacted by the General Assembly.[7] Any waiver is to be

---

4. Plaintiff's complaint paragraphs 21–25.

5. *Shellhorn & Hill, Inc. v. State,* 187 A.2d 71, 74 (Del.1962).

6. *Id,* at 72.

7. *Blair v. Anderson,* 325 A.2d 94, 96 (Del. 1974).

strictly applied and extends only to the terms of the statute.[8] In addition, a general waiver of immunity is not to be implied from a restricted waiver.[9]

To understand if the Whistleblower Act constitutes a statutory waiver of immunity/consent to be sued, the Act itself must be analyzed. Unlike other remedial statutes, the Whistleblower Act does not contain either a section containing findings or a statement of purpose. So there is no express statutory guide as to purpose. It is necessary, therefore, to review salient provisions to determine its reach as it relates to the State.

First, the Whistleblower Act provides protection to an employee:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment:
>
> (1) Because the employee, or a person acting on behalf of the employee, reports or is about to report a public body, verbally or in writing, a violation which the employee knows or reasonably believes has occurred or is about to occur, unless the employee knows or has reason to know that the report is false; or
>
> (2) Because an employee participates or is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action, in connection with a violation as defined in this chapter; or
>
> (3) Because an employee refuses to commit or assist in the commission

of a violation, as defined in this chapter; or

> (4) Because the employee reports verbally or in writing to the employer or the employee's supervisor a violation, which the employee knows or reasonably believes has occurred or is about to occur, unless the employee knows or has reason to know that the report is false. Provided, however that if the report is verbally made, the employee must establish by clear and convincing evidence that such report was made. (74 Del. Laws, c. 361, § 1)[10]

The words "public body" used above are defined as meaning:

a. A state-wide elected official, agency, department, division, bureau, board, commission, council, authority, or other body in the executive branch of state government or employee of them;

b. A legislator or employee of the legislative branch of state government;

c. An elected official of a county, city, or school district or employee of them;

d. A law enforcement agency or employee of that law enforcement agency; and

e. A federal agency or employee of that federal agency.[11]

Employer is defined to include a number of private entities and "any department, agency, commission, committee, board, council, bureau, or authority or any subdivision of them in state, county, or municipal government."[12]

---

8. *Raughley v. Department of Health & Social Services*, 274 A.2d 702, 703 (Del.Super.1971).

9. *Id.*

10. 19 *Del.C.* § 1703.

11. 19 *Del.C.* § 1702(4)a-e.

12. 19 *Del.C.* § 1702(2).

The word "violation" used in § 1703, and which the employee reports, is defined as:

An act or omission by an employer, or an agent thereof, that is:

a. Materially inconsistent with, and a serious deviation from, standards implemented pursuant to a law, rule, or regulation promulgated under the laws of this State, a political subdivision of this State, or the United States, to protect employees or other persons from health, safety, or environmental hazards while on the employer's premises or elsewhere; or

b. Materially inconsistent with, and a serious deviation from, financial management or accounting standards implemented pursuant to a rule or regulation promulgated by the employer or a law, rule, or regulation promulgated under the laws of this State, a political subdivision of this State, or the United States, to protect any person from fraud, deceit, or misappropriation of public or private funds or assets under the control of the employer.[13]

■ The Whistleblower Act provides for several remedies if there has been a violation: declaratory relief and/or actual damages,[14] and, if appropriate, reinstatement, back wages, full reinstatement of fringe benefits and seniority rights, expungement of any of the disciplinary records, or any combination of these remedies.[15]

The issue is whether this remedial statute operates to lift the bar of sovereign immunity the State otherwise enjoys. The Court holds that the Whistleblower Act operates as a waiver of immunity where a violation occurs and an action is brought. There are various reasons.

First, and most importantly, is the definition of employer. It includes "any department, agency ... of the state." That language could not be clearer. The Act, of course, further defines employer to include the counties and municipal governments. The definition, including the State, alone operates as a waiver. The right to sue and by implication to be sued, also operates as a waiver of immunity.

In addition to this language in the Whistleblower Act is language in the enacting legislation. Though not codified, it links the Act to another statute protecting whistleblowing State employees:

Nothing in this act (the Whistleblower Act) shall be interpreted to modify, abrogate or reduce any protection afforded to state employees pursuant to § 5115 of Title 29.[16]

That statute reads:

(a) For purposes of this section, the following words, terms and phrases shall have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning.

(1) "Public employee" shall mean any full-time or part-time employee of the State, its school districts, or a county or municipal government.

(2) "Elected official" shall mean the Auditor of Accounts, a state, school district, county or municipal official elected by popular vote of same and employees of said offices.

(b) No public employee shall be discharged, threatened or otherwise discriminated against with respect to the terms or conditions of employ-

---

**13.** 19 *Del.C.* § 1702(6).

**14.** 19 *Del.C.* § 1704(a).

**15.** 19 *Del.C.* § 1704(d).

**16.** 74 Del. Laws c. 361, Section 2.

ment because that public employee reported, in a written or oral communication to an elected official, a violation or suspected violation of a law or regulation promulgated under the law of the United State, this State, its school districts, or a county or municipality of this State unless the employee know that the report is false.

(c) An employee who alleges a violation of this section may bring a civil action for appropriate injunctive relief, actual damages, or both, within 90 days after the occurrence of the alleged violation of this section.

This statute is part of Title 29, c. 51 covering (state) Public Officers and Employees. Section 5115 was originally enacted in 1983 with one substantive amendment in 1994. As it now reads, this section provides protection to state employees for certain kinds of whistleblowing activities. Any state employee believing himself or herself to be wronged is authorized to bring a civil suit for damages and/or injunctive relief.

This section, also, has not received, until now, any attention from a state court. However, it has received some attention in two United States District Court decisions. In both cases, the court recognized the ability of terminated school employees to bring an action under § 5115.[17] These cases are persuasive authority that the State has waived sovereign immunity by enacting § 5115 and consenting to be sued. In those cases, the State either conceded immunity had been waived or never interjected the defense. Since the District Court never discussed the issue of immunity or waiver under § 5115, the more likely explanation is that the State conceded there was no sovereign immunity barring those plaintiffs' causes of action.

By preserving the rights and remedies of § 5115 when it enacted the Whistleblowing Act, the General Assembly provided an explicit waiver of immunity.[18] There is also legislative history to the enactment of the Whistleblower Act which underscores that point.

■ In interpreting a statute, legislative history can be of assistance.[19] In this case, that history supports the conclusion that the State has consented to being sued for a violation of the Whistleblower Act. The original version of what was to become the Act is found in Senate Bill No. 173 of the 142nd General Assembly. In that original version, Section 2 stated:

Amend Title 29 of the Delaware Code by deleting § 5115 thereof in its entirety.

As noted,[20] § 5115 is the section providing protection of State employees and remedies against the State violating the protection afforded in that section. The synopsis to SB 173 stated:

This Act extends whistleblowing protection to all employees in the State. Currently, only public employees communicating to elected officials are so protected.

The Senate Bill was significantly amended by House Amendment No. 3 and, of course, is reflected in what is now Title 19, c. 17–the Whistleblower Act. One of the

**17.** *McHugh v. Board of Education of the Milford School Dist.*, 100 F.Supp.2d 231 (D.Del. 2000); *Hauge v. Brandywine School District*, 131 F.Supp.2d 573 (D.Del.2001).

**18.** *Pauley v. Reinoehl*, 848 A.2d 569, 576 (Del. 2004).

**19.** *State v. Dickerson*, 298 A.2d 761, 765 (Del. 1972).

**20.** *Supra* p. 764.

amendments was to section 2 of SB 173 and states:

> Section 2. Nothing in this Act shall be interpreted to modify, abrogate or reduce any protection afforded to State employees pursuant to 29 *Del.C.* § 5115.

As if the amendment to Section 2 were not a clear enough statement of intent, the synopsis to House Amendment No. 3 underscores that intent:

> Finally, this Amendment provides that nothing in House Bill No. 496 [sic HB 496 is an act to amend the Wilmington City Charter] shall be interpreted to modify, abrogate or reduce any protection afforded to State employees pursuant to 29 *Del.C.* § 5115.

The revised Section 2 of the legislation and the accompanying synopsis show a clear recognition by the General Assembly that the protection of § 5115 is preserved. But also preserved is the right to sue and the state's exposure to suit. The revised Section 2, therefore, is a re-affirmation of the waiver previously enacted. Even though the Whistleblower Act's own provisions alone removes the immunity bar,[21] the legislative linkage of the Act with § 5115 further demonstrates a legislative waiver of immunity.

The analysis of waiver does not and cannot stop there either. The Court has previously touched on the definition of employer as including the State.[22] In addition, and of great significance to the waiver/consent issue, is the provision proving for remedies, § 1704:

(a) A person who alleges a violation of this chapter may bring a civil action for appropriate declaratory relief, or actual damages, or both within 3 years after the occurrence of the alleged violation of this chapter.

(d) A court, in rendering a judgment in an action brought under this chapter, shall order, as the court considers appropriate, reinstatement of the employee, the payment of back wages, full reinstatement of fringe benefits and seniority rights, expungement of records relating to the disciplinary action or discharge, actual damages, or any combination of these remedies. A court may also award, as part of a judgment in an action brought under this chapter, all or a portion of the costs of litigation, including attorneys fees, if the court determines that such an award is appropriate.

The State therefore has given itself the right to be sued and the employee a right to sue. This acts as a waiver.[23] The General Assembly has, therefore, clearly evidenced an intent that the State not enjoy immunity as to the violations specified in the Whistleblower Act.[24]

■ The State, however, argues that it is, nonetheless, immune from suit because it has no insurance to cover against the claims Tomei has made.[25] Ordinarily the

---

**21.** *Supra* pp. 763–764.

**22.** *Supra* p. 762.

**23.** *Sandt v. Delaware Solid Waste Authority*, 640 A.2d 1030, 1035 (Del.1994).

**24.** *Raughley v. Department of Health and Social Services*, 274 A.2d 702 (Del.Super.1971).

**25.** I, Debra Lawhead, being first duly sworn according to law, depose and say:

1. I am the Insurance Coverage Administrator of the State of Delaware.
2. My duties include administration of insurance coverage in all instances in which the State has waived sovereign immunity by establishing a State Insurance Coverage Program pursuant to 18 *Del.C.* § 6501.
3. As the Insurance Coverage Administrator, I am responsible for administering the policies of the Insurance Determination

State's argument would be correct under *Doe v. Cates*:[26] where there is no insurance, immunity has not been waived. But the clear intention of the Legislature in providing that: (1) state employees are protected under the Whistleblower Act, (2) the State can be sued, and (3) that employees can sue for specific remedies, including reinstatement and return of seniority and expungement of disciplinary records, means the lack of insurance is irrelevant. Similarly a state employee wronged under § 5115 has various non-monetary remedies, such as for injunctive relief.

■ It is important to note that both 29 *Del.C.* § 5115 and 19 *Del.C.* § 1704 provide for monetary relief and non-monetary relief, such as reinstatement, restoration of seniority and for injunctive relief. It would seem incongruous, if not irrational, to hold that the State consented to be sued for such relief but retains immunity for the monetary relief. Courts are to avoid absurd results when interpreting statutes.[27] Yet that is the thrust of the lack of insurance argument these defendants raise. Naturally the insurance would be to cover the risk that the State might violate the Whistleblower Act. But, of course, that insurance protects against monetary damages. While there be no insurance for the risk, there are remedies still obtainable where the non-existence of insurance is meaningless.

The issue really is that the State has consented to being sued which is distinct from the limited waiver, for instance, under the Tort Claims Act[28] where there needs to be the additional "waiver" through purchase of insurance.

There do not appear to be any cases *expressly holding* that an express waiver of immunity or the right to be sued renders irrelevant the non-existence of insurance coverage. The closest expression of that proposition is found *Turnbull v. Fink:*

> In *Sandt v. Delaware Solid Waste Authority,* Del.Super., 640 A.2d 1030 (1994), we recently considered the issue of waiver of sovereign immunity as to the Delaware Solid Waste Authority ("Waste Authority"). We held that the General Assembly had expressly waived Waste Authority's sovereign immunity by enacting 7 Del.C. § 6406(a)(5) which gives Waste Authority the power to "[s]ue and be sued." We were therefore not called upon to rule on Sandt's alternative argument that Waste Authority's

Committee and therefore, I have personal knowledge of the policies established by that Committee.

4. I have reviewed the Complaint in the above-captioned case.

5. The State of Delaware and its agency (Department of Labor), has not purchased any insurance that I am aware of that would be applicable to the circumstances and events alleged in the Complaint against the State of Delaware and its agency (Department of Labor) in the above-captioned matter.

6. The General Assembly of the State has not appropriated any money for obtaining said insurance, nor has the General Assembly enacted and legislation pertaining to or allowing any possible liability of the

State resulting from the facts as alleged in said Complaint.

7. None of the commercial insurance secured for the State during any fiscal year provided for coverage for the type of injury asserted in the complaint in the above captioned matter.

8. The State of Delaware has not established a Self Insured Program to cover the risk applicable to the circumstances alleged in the complaint.

**26.** 499 A.2d 1175 (Del.1985); 18 *Del.C.* § 6511.

**27.** *Snell v. Engineered Systems & Designs,* 669 A.2d 13, 20 (Del.1995).

**28.** 10 *Del.C.* §§ 4001–4005.

purchase of insurance waived its sovereign immunity under 18 Del.C. § 6511.[29]

All of the opinions since *Doe v. Cates* have addressed the issue of the existence or non-existence of insurance in the context of claims made under the Tort Claims Act[30] or under provisions relating to specific agencies, such as the Delaware Administration for Regional Transit.[31] The Delaware Administration for Regional Transit, DART, was the State agency involved in *Turnbull.* A statute authorized DART to purchase insurance up to certain limit. The Supreme Court held DART's immunity was waived up to that amount but that it enjoyed sovereign immunity from liability for damages above it.[32]

In addition, Tomei's first claim is under the provisions of the Whistleblower Act, not the Tort Claims Act. In that Act and in § 5115 there are remedies, such as reinstatement, injunctive relief, expungement of records, etc., not coverable by insurance. The State has explicitly authorized its employees to sue and has consented to be sued and a variety of remedies are provided. Under these circumstances, this express waiver of sovereign immunity trumps the absence of insurance coverage.

### Action Against Individuals

■ The discussion of waiver and immunity has so far related to the State of Delaware and the Department of Labor. But Tomei has brought a whistleblower action against two individual State employees, Secretary Sharp and Strong. There are several reasons why she cannot recover against them under the terms of the statute. First, Tomei was an employee of the State, not of the two individuals. Second, the State is liable for the financial obligations that could result from a successful action under the Whistleblower Act, and duty-bound to comply with any of the non-monetary remedies, if ordered. Third, the definition of employer in the Act does not include individuals.

### Cause of Action Against State/DOL

■ The undisputed record is that Tomei's "whistleblowing" occurred while she was an employee of the United State Government and concerned federal government matters. There is nothing in the record that she undertook any "whistleblowing" activity during her employment with the State or that it involved any action of a state employee or of state government.

The issue that remains, therefore, is whether Tomei has a cause of action against the State of Delaware/DOL when the whistleblowing did not relate to the State in any way. As noted earlier, the protection and coverage of the Whistleblower Act is not limited to public employees. It covers and protects private sector employees also. The answer to this question is, therefore, manifestly one of statutory interpretation.

When interpreting a statute, the Court's role is to determine and give effect to the Legislature's intent.[33] Where a statute is unambiguous and there is no reasonable doubt as to its meaning, the Court must give effect to its literal meaning.[34] Where the intent of the Legislature is clearly reflected by unambiguous language in the

---

**29.** 668 A.2d 1370, 1376 (Del.1995).

**30.** 10 *Del.C.* §§ 4001–4005.

**31.** *Turnbull v. Fink,* 668 A.2d at 1374.

**32.** *Id,* at 1381.

**33.** *Ingram v. Thorpe,* 747 A.2d 545, 547 (Del. 2000).

**34.** *Hudson Farms v. McGrellis,* 620 A.2d 215, 217 (Del.1993).

statute, the language itself controls.[35] If, however, a statute is reasonably susceptible if different conclusions or interpretations, it is ambiguous.[36]

The issue then is whether the Whistleblower Act is *reasonably* susceptible to different conclusions. To resolve that issue, the premise at this stage is, of course, that Tomei was fired from her State job for her prior whistleblowing activities involving a federal matter and which she did while a federal employee.

There is a statutory construct which could be read to provide protection in such an instance. Where appropriate the Court will use the statutory language listing how employers, in this case the State, might violate the Whistleblower Act[37] while inserting names or agencies:

The State shall not discharge or otherwise discriminate against Tomei regarding her privileges of employment:

(1) Because she reports ... verbally or in writing to a federal agency (a public body under 19 *Del.C.* § 1702(4)(e)) a violation[38] which Tomei knows or reasonably believes has occurred ...

(2) Because Tomei participated in or is requested by a federal agency to participate in an investigation ... in connection with a violation ...

The issue can be framed in a broader context, too. Does the Whistleblower Act protect and/or did the Legislature intend it to protect a whistleblower from the actions of a subsequent, unrelated employer even if discharged or disciplined by such employer for that earlier whistleblowing? In

other words, is the employee protectively cloaked for a lifetime?

Reference to legislative history is also appropriate when trying to resolve such an issue.[39] There are two pertinent parts to the legislative history of the Whistleblower Act. The first part is the original version of the proposed Act which was embodied in Senate Bill 173. The synopsis to SB 173 stated:

This Act extends whistleblower protection to all employees in the State. Currently, only public employees communicating to elected officials are so protected.

Senate Bill 173 did not define what violations that an employee reported would be those that would trigger the protection given under the bill. That, in part, prompted a comprehensive amendment to the bill, namely, House Amendment No. 3, which was adopted. In addition to the change in the provision regarding State employees noted earlier,[40] House Amendment 3 defined the violations which, if reported, triggered the protection created. The amendment covered a number of other areas, also. It also carried a new and more extensive synopsis, pertinent portions of which state:

This amendment specifies that whistleblowing protection under Senate Bill No. 173 is granted to employees with regard to reports of participation in investigations of *acts or omissions of their employer* .... (emphasis added)

Court assumes that what Tomei reported meets that definition.

**35.** *Spielberg v. State,* 558 A.2d 291, 293 (Del. 1989).

**36.** *Coastal Barge Corp. v. Coastal Zone Ind. Control Bd.,* 492 A.2d 1242, 1246 (Del.1985).

**37.** 19 *Del.C.* § 1703

**38.** Which is defined in § 1702(6) but, which for purposes of this motion to dismiss the

**39.** *A & P Stores v. Hannigan,* 367 A.2d 641, 643 (Del.1976).

**40.** *Supra.* p. 765.

That phraseology is of great assistance to the Court in interpreting the Whistleblower Act. It ties the protection under the Act to whistleblowing activity involving the employee to acts or omissions of the employer about whom the whistleblowing is made. It does not link the protection to whistleblowing involving a former employer. The synopsis language does not indicate that the protection follows the employee to a new unrelated employer.[41]

Another important statutory interpretation principle is that statutes are to be construed to achieve a common sense result and to avoid a result a construction which would lead to unreasonable or absurd results.[42] The construct created above[43] would violate that principle. It would permanently cloak a whistleblowing employee with protection from termination or other employment sanctions and expose any and all subsequent, unrelated employer(s) who fire(s) or take(s) other action detrimentally affecting the employee to unwarranted litigation.

The construct stopped, with the first, subsequent employer (here the State). But the construct and Tomei's argument would logically not stop with the first subsequent employer but would provide protection for the employment life of the employee for the second, fourth, tenth employer.[44]

And, of course, such a lifetime cloaking would provide a claim for relief against any subsequent employer regardless of merit or relevance if the employee were disciplined or discharged. The chilling effect against the subsequent employer is manifest. The chilling effect is and has to be visited on the employer who takes action against any employee's legitimate whistleblowing activity involving that employer. The Court believes the Legislature did not intend the protective reach of the Whistleblower Act to be that extensive. In the Court's view to interpret the Act to do so results in an unreasonable and/or absurd result.

As a consequence, Tomei does not have a cause of action against the State of Delaware under the provisions of the Whistleblower Act.

### Contract Claim

 But Tomei has brought an additional action against all defendants for an alleged violation of the covenant of good faith and fair dealing. Such a covenant is an implied part of every employment contract.[45] A claim for a breach of this covenant is one sounding in contract. While this claim is one in contract, it, nevertheless, implicates the State Tort Claims Act.[46] This statute does not act as a general waiver of general immunity; it codifies

---

41. Tomei has provided an affidavit from, Senator Karen Peterson, one of the original fourteen co-sponsors of SB 173. In it, she states that: "I intended the Statute to protect an employee who is terminated by a current employer in retaliation for the employee's whistleblowing activity against a former employer." With all respect to Senator Peterson, neither synopsis states that intent. HA # 3 contradicts it and her affidavit speaks only of her intention not that of the members who voted for SB 173 as amended by HA # 3.

42. *State v. Demby*, 672 A.2d 59, 61 (Del.1996).

43. *Supra.* pp. 763–765.

44. The facts of this case and the interpretation of the Whistleblower Act in this opinion do not address the circumstances where a whistleblowing employee is moved from one agency, department, or division to another but remains with the same basic employer. To the extent that ever becomes an issue, it is to be resolved on another day.

45. *Merrill v. Crothall–American*, 606 A.2d 96, 101 (Del.1992).

46. 10 *Del. C.* §§ 4001–4005.

the common law on sovereign immunity and provides the narrow exceptions to that immunity.[47]

To overcome the immunity otherwise present, Tomei must negate one of the following [48]:

(1) The act or omission complained or arose out of an in connection with the performance of an official duty requiring a determination of policy, the interpretation or enforcement of statutes, rules or regulations, the granting or withholding of publicly created or regulated entitlement or privilege or any other official duty involving the exercise of discretion on the part of the public officer, employee or member, or anyone over whom the public officer, employee or member shall have supervisory authority;

(2) The act or omission complained of was done in good faith and in the belief that the public interest would best be served thereby; and

(3) The act or omission complained of was done without gross or wanton negligence; provided that the immunity of judges, the Attorney General and Deputy Attorneys General, and members of the General Assembly shall, as to all civil claims or causes of action founded upon an act or omission arising out of the performance of an official duty, be absolute; provided further that in any civil action or proceeding against the State or a public officer, employee or member of the State, the plaintiff shall have the burden of proving the absence of 1 or more of the elements of immunity as set forth in this section.[49]

 Tomei claims the action of firing her was done willfully, wantonly, and maliciously. At this stage, therefore, based on that allegation and others in her complaint, such as, she was given no work plan, the cancelled meetings, she has made the initial threshold showing to reach these defendants. But the analysis does not stop there.

The reason is that the defendants have provided an affidavit from the Insurance Coverage Administrator for the State, Debra Lawhead, indicating that no insurance has been purchased for any of the claims made in Tomei's complaint.[50] That fact is key. Even though Tomei has negated one of the elements in § 4001, the State still enjoys immunity under 18 *Del.C.* § 6511 where no insurance coverage exists:

The defense of sovereignty is waived and cannot and will not be asserted as to any risk or loss covered by the state insurance coverage program, whether same be covered by commercially procured insurance or by self-insurance, and every commercially procured insurance contract shall contain a provision to this effect, where appropriate.

Sections § 4001 and 6511 must be read *in pari materia.*[51] The Supreme Court has held that insurance coverage must also exist in order to make a claim under § 4001.[52] On that basis Tomei cannot

---

**47.** *Doe v. Cates,* 499 A.2d at 1181.

**48.** *Vick v. Haller,* 512 A.2d 249, 251 (Del.Super.1986).

**49.** 10 *Del.C.* § 4001.

**50.** *Supra* footnote 25.

**51.** *Watson v. Burgan,* 610 A.2d 1364, 1368 (Del.1992).

**52.** *Doe v. Cates,* 499 A.2d at 1181.

demonstrate a waiver of sovereign immunity regarding her claim for an alleged breach of the covenant of good faith and fair dealing.

### Conclusion

For the reasons stated herein, the defendants' motion to dismiss is **GRANTED.**

**IT IS SO ORDERED.**