**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| MARTIAYNA WATSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.: N23C-06-239 CEB |
| | ) | |
| DIVISION OF STATE | ) | |
| POLICE, DEPARTMENT OF | ) | |
| SAFETY & HOMELAND | ) | |
| SECURITY, STATE OF | ) | |
| DELAWARE, MICHAEL | ) | |
| MACAULAY, and THOMAS | ) | |
| DYSON, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: May 19, 2025
Decided: August 4, 2025

## MEMORANDUM OPINION

*Upon Consideration of Defendants' Motion to Dismiss;*
**GRANTED i**n part and **DENIED** in part.

Theopalis K. Gregory, Esquire of the Law Firm of Theopalis K. Gregory, Sr., Esquire and Raj Srivatsan, Esquire and Kiadii Harmon, Esquire of The Igwe Firm. *Attorneys for Plaintiff.*

Nicholas Dominick Picollelli, Esquire, Department of Justice. *Attorney for Defendants*.

**BUTLER, R.J.**

On June 23, 2021, police were searching for a man and a woman in a dark grey Nissan Maxima. According to the Complaint, they came upon the Plaintiff, who was in her light grey Nissan Altima. Defendant Delaware State Police Officers Michael Macaulay and Thomas Dyson, and presumably other officers, boxed in Plaintiff's car, smashed the rear driver's side window, grabbed Plaintiff from her car, placed a taser to her neck, and uttered needlessly colorful language toward her. It was about then they realized she was not the suspect they were seeking, released her and left.

Plaintiff sued the 2 named officers, the Division of State Police ("DSP"), and the Department of Safety and Homeland Security ("DSHS").

## PROCEDURAL HISTORY

Less than a month after the incident on July 14, 2021, Plaintiff filed the first iteration of her claims in the U.S. District Court for the District of Delaware (*Watson I*). That suit invoked federal jurisdiction under section 1983 and named only the DSHS and DSP as Defendants – not the individual officers. In September 2022, the District Court ruled that state agencies cannot be sued for the torts of its agents under section 1983 and granted summary judgment in favor of the named defendants on grounds of sovereign immunity.[1]

---

[1] *Watson v. Div. of State Police, Dep't of Safety & Homeland Sec.*, 2022 WL 4365854, at *2 (D. Del. Sept. 21, 2022).

On June 26, 2023 – 2 years and 3 days after the incident – Plaintiff filed this Complaint in Superior Court (*Watson II*). As noted in the caption, this Complaint names not only the original DSHS/DSP Defendants, but also two individual police officers. Plaintiff also stripped out her section 1983 claims and now asserts only state law claims. That notwithstanding, Defendants removed the case to federal court, asserting that the complaint contained alleged violation of federal rights. Defendants moved to dismiss the federal action on its merits, while Plaintiff eventually woke up to the fact that she was in federal court without a federal claim and sought remand to state court.[2]

In January, 2025 the District Court remanded the dispute back to this Court. The Complaint is now solely a creature of state law, and the District Court recognized that there was no federal subject matter jurisdiction in the revised Complaint.[3]

Defendants have moved to dismiss in this Court, apparently reprising their arguments on the state law claims previously asserted in federal court. The Court will tackle them as necessary to resolve Defendants' motion to dismiss.

---

[2] *See Watson v. Div. of State Police*, 2025 WL 26733, at *5 (D. Del. Jan. 3, 2025).

[3] *Id.* at *3 ("The Court agrees with Plaintiff that it does not have subject matter jurisdiction here, and that this case must therefore be remanded to the Superior Court.").

## ANALYSIS

### 1.    The Statute of Limitations Bars Claims Against the Individual Officers

The statute of limitations for a personal injury action in Delaware is two years.[4] The incident in question took place on June 23, 2021.[5] The Complaint before the Court was filed on June 26, 2023.[6] That is 3 days after the statute ran. The statute of limitations is "jurisdictional" – suits brought after the statute has run are dismissible on the pleadings.[7]

---

[4] 10 *Del. C.* § 8119.

[5] The Complaint alleges the incident occurred "on or about June 24." D.I. 1 Compl. (June 26, 2023) at 1, Transaction ID 70261916. But the parties stipulated in federal court that the date was June 23, 2021. D.I. 12 Defs.' Mot. to Dismiss Ex. C. (Apr. 3, 2025) at 10, Transaction ID 75992826. The Court presumes the specificity of the stipulation is more accurate than "on or about" in the Complaint as filed. *See Ravenswood Inv. Co., L.P. v. Est. of Winmill*, 2018 WL 1410860, at *2 (Del. Ch. Mar. 21, 2018), *as revised* (Mar. 22, 2018), *aff'd*, 210 A.3d 705 (Del. 2019) (held the courts may take judicial notice of stipulated facts); *Organovo Holdings, Inc. v. Dimitrov*, 162 A.3d 102, 105 (Del. Ch. 2017) (held courts may take "judicial notice of previous proceedings in a related action.); *Orman v. Cullman*, 794 A.2d 5, 16 (Del. Ch. 2002) ("If a plaintiff's complaint alleges a fact that is unambiguously contradicted by an integral document incorporated into the complaint and there are no other facts in that document supporting the allegation, the Court need not accept as true the fact as alleged in the complaint. The Court may accept the fact as set forth in that incorporated document because, by doing so, the Court is not choosing between alternate interpretations of an ambiguous document but permissibly considering a fact recorded in a document integral to the plaintiff's claims.").

[6] D.I. 1 Compl. (June 26, 2023) at 1, Transaction ID 70261916.

[7] *ISN Software Corp. v. Richards, Layton & Finger, P.A.*, 226 A.3d 727, 731 (Del. 2020) (quoting *Scharf v. Edgcomb Corp.*, 864 A.2d 909, 920 (Del. 2004)) ("Statutes of limitations 'establish jurisdictional prerequisites for initiating or maintaining a suit.'"); *Trott v. Delaware Div. of Child Support Servs.*, 2025 WL 816768, at *3 (Del. Super. Mar. 13, 2025), *reargument denied*, 2025 WL 1009418 (Del. Super. Ct. Apr. 3, 2025) (quoting ISN Software Corp., 226 A.3d at 731)) (same).

Plaintiff does not really dispute this bedrock principle, or that the statute had run when the case was filed, but argues instead that this case falls within an exception to the two-year limitation period. 10 *Del. C.* § 8118(a), the "savings clause" statute, permits the re-filing of a complaint in the proper forum within one year of its dismissal when it has been previously dismissed on procedural grounds. Plaintiff argues that *Watson I* was dismissed by the District Court in September, 2022 and so *Watson II* could be filed within 1 year thereafter.

The most glaring problem with this argument is that *Watson II* names 2 more defendants than *Watson I*. So, even accepting Plaintiff's argument that the Complaint is "saved" from the statute of limitations by reason of the District Court's dismissal of *Watson I*, the Complaint cannot save what it never had – and it never had the individual defendants until after the statute had run. Thus, the Court must dismiss the individual defendants as they were sued outside the statute of limitations.

The state agency Defendants – DSHS and DSP – do not argue that the Complaint was untimely as to them and thus, the Complaint must now be analyzed as one against the entities only.

## 2. The Department of Homeland Security and the Division of State Police are Immune from Suit

Defendants DSHS and DSP move to dismiss on grounds that they are immune from suit due to sovereign immunity in that they are instruments of state

government.[8]  Plaintiff has not argued to the contrary.  They are dismissed unless Plaintiff can show that the state has waived sovereign immunity or there is some other means by which to attach liability.

*A. The State Tort Claims Act*

The Delaware State Tort Claims Act ("DSTCA") is found in Title 10, Chapter 40, Subchapter 1.[9]  It represents the General Assembly's limitation on the constitutional grant of immunity for state actions and permits citizens to sue their government under certain, albeit limited, circumstances.

There is no question but that DSHS and DSP are arms of the executive branch of state government and are immune from suit.  Other than apparently employing the two named police officers, they are scarcely mentioned in the Complaint at all.  If Defendants are to be liable, it can only be indirectly, through the doctrine of *respondeat superior*.

---

[8] "It is settled law in Delaware that the State is immune from suit without its consent. And that immunity extends to State Agencies. The doctrine of immunity is derived from the Constitution and is not dependent on the merits of the claim asserted nor upon the purity of the State's conduct." *Donovan v. Delaware Water & Air Res. Comm'n*, 358 A.2d 717, 721 (Del. 1976) (citing *Shellhorn & Hill, Inc. v. State*, 187 A.2d 71 (Del. 1962)) (internal citations omitted); *Doe v. Cates*, 499 A.2d 1175, 1181 (Del. 1985) (citing Del. Const. art. I, § 9) ("the doctrine of sovereign immunity was not judicially created in Delaware. It was established by the State Constitution."); *Turnbull v. Fink*, 668 A.2d 1370, 1376–77 (Del. 1995) (citing *Raughley v. Department of Health & Social Services*, 274 A.2d 702 (Del. Super. 1971)) ("A waiver of sovereign immunity must be a clear and specific act of the General Assembly.").

[9] It is NOT – as Plaintiff presumed in her briefing - found in Subchapter 2, which is the County and Municipal Tort Claims Act.

*B. Liability and the Doctrine of Respondeat Superior*

*Respondeat superior* is not a tort. Rather, it is a doctrine that originates in agency law and imposes liability on the principal when the agent acts in the scope of and in furtherance of the principal's business.[10] So, for obvious example, a police department could be liable for the acts of police officers who act in the scope of and in furtherance of the police department's business.

The DSTCA articulates state governmental immunity thus: "no claim or cause of action shall arise, and no judgment, damages, penalties, costs or other money entitlement shall be awarded or assessed against the State *or any public officer or employee*."[11] Thus, the DSTCA extends the immunity not just to state agencies, but also to its employees. The doctrine of *respondeat superior* is only triggered if Plaintiff overcomes the threshold of showing that the employee's actions are not immune under the DSTCA.

Lest all this appear more definitive than it really is, we must consider the caveats in the DSTCA. The immunity, it is said, extends "when the following elements are present:"

---

[10] RESTATEMENT (THIRD) OF AGENCY § 7.07 (AM. L. INST. 2006) ("An employer is subject to vicarious liability for a tort committed by its employee acting within the scope of employment."); *see also Khanna v. McMinn*, 2006 WL 1388744, at *28 (Del. Ch. May 9, 2006) (quoting *Arnold v. Soc'y for Sav. Bancorp, Inc.,* 1995 WL 376919, at *8 (Del. Ch. June 15, 1995) ("*Respondeat superior* imposes liability upon a principal for the torts of his agent committed within the scope of their agency relationship.").

[11] 10 *Del. C.* § 4001 (emphasis added).

1) The acts arise out of any official duty involving the exercise of discretion on the part of the public officer, employee or member,

2) The acts were done in "good faith and in the belief that the public interest would be served thereby," and

3) The acts were done "without gross or wanton negligence."

There cannot be any doubt but that a police officer deciding to affect a stop or arrest of an individual involves the exercise of discretion. One would be hard pressed to imagine a state function more discretionary than a policeman's decision to arrest a citizen on suspicion of criminal activity.

While criterion number one is easily met here, more nuances arise in connection with "good faith" and "gross or wanton negligence." This is all the more so when the Court is reviewing the bare pleadings of the Complaint and no discovery has been taken. So the pleading standards for these allegations becomes important.

## B. Pleading Bad Faith and Gross or Wanton Negligence

Although the statute protects activity undertaken in good faith and without gross negligence, courts have routinely given the state actors a rebuttable presumption that their actions meet the statutory standard and placing the pleading burden on the Plaintiff to show bad faith and gross negligence.[12] This has the

---

[12] *See, e.g. In re Covid Related Restrictions on Religious Services*, 302 A.3d 464, 487-88 (Del. Super. 2023, *aff'd*, 323 A.3d 626 (Del. 2024), *Jackson v. Minner*, 2013 WL 871784 (Del. Super. March 1, 2013), *aff'd*, 74 A.3d 364 (Del. 2013); *Ward v. Gateway Charter Sch., Inc.*, 2018 WL 3655864, at *5 (Del. Super. July 18, 2018) ("Because the Court finds that Plaintiff has failed to plead that Defendant's alleged actions or failures to act were ministerial, that Defendant acted in bad faith, or that Defendant acted with gross or wanton negligence, Plaintiff has not met its burden

advantage of requiring the Plaintiff to state her case up front and hopefully make an early determination as to the applicability of the immunity statute.[13]

The factual allegations here are those stated at the outset: Plaintiff was in her light grey Nissan Altima at a gas station on South Market Street. She was followed from there by what she believed to be an undercover police vehicle for a number of blocks and then was boxed in by four such vehicles. Officers alighted from said vehicles, one of whom smashed her rear driver's side window, others of whom removed her from her car. She was threatened with a taser and placed on the ground when one of the officers said, "I think we have the wrong person," whereupon the officers got back in their cars and left, presumably continuing their search for the man and woman in a dark grey Nissan Maxima.

There are no allegations that the police had ulterior, darker motives than finding the couple in the grey Nissan. Nothing said or done, as reported in the Complaint, suggests more. On the other hand, the allegations depict police officers that were at least rude to an innocent citizen, damaged her vehicle, and subjected her to needless threats and embarrassment.

---

to overcome Defendant's entitlement to immunity as established in the DSTCA. Therefore, Plaintiff has failed to state a claim upon which relief can be grated.") (footnote omitted).

[13] *See, e.g., J.L. v. Barnes*, 33 A.3d 902, 915 (Del. Super. 2011) ("qualified immunity is not just a defense to liability, it is also an entitlement to avoid the burdens of litigation" and "must be resolved at the earliest possible stage of litigation.").

So the issue at this stage comes down to whether these facts make out a case of "gross or wanton" negligence or, as Defendants argue, at worst "simple" negligence. The distinction is one of degree but it matters greatly. Other than creative hyperbole, the parties have done little at this early stage to sharpen their focus on what exactly was done that was allegedly negligent, gross, wanton or simple.

The motion to dismiss DSP and DSHS is simply too premature based on the record before the Court. [14] The prudent course is to let the parties engage in discovery and, if a more fulsome record supports it, return to the Court with a better articulated argument as to the applicability of the DSTCA and the degree of culpability, if any, of the police to the Plaintiff.

The Motion to Dismiss is therefore **GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED.**

/s/ Charles E. Butler

Charles E. Butler, Resident Judge

cc:     Prothonotary

---

[14] *State v. Premier Healthcare Inc.*, 2018 WL 3013484, at *6 (Del. Super. June 14, 2018) ("Dismissal is premature at this juncture without a fully developed factual record."); *Wilson v. Hunter*, 2022 WL 90209, at *3 (Del. Super. Jan. 5, 2022) ("Here, Moving Defendants prematurely seek dismissal before any factual record has been developed.").